James McGOVERN, et al., Respondents,

v.

CITY OF MINNEAPOLIS, et al., Petitioners–Appellants,

Special Agent James Braseth, et al., Defendants.

No. C5–91–37.

Court of Appeals of Minnesota.

Jan. 21, 1992.

Review Denied Feb. 27, 1992.

R. James Jensen, Jr., R. James Jensen & Assoc., St. Paul, for James McGovern, et al., respondents.

Gail Lynn Langfield–Seiberlich, Marshall and Associates, Circle Pines, for City of Minneapolis, et al., petitioners-appellants, Special Agent James Braseth, et al., defendants.

Considered and decided by LANSING, P.J., and RANDALL and PETERSON, JJ.

## OPINION

RANDALL, Judge.

This is an appeal from an order denying a defense motion, based on several differ-

ent grounds, for summary judgment. The case involves alleged violations of federal and state constitutional rights, state tort claims, and an alleged taking of private property for public use. In a prior unpublished opinion, we reversed in part and dismissed the remainder of the appeal, finding certain issues nonappealable. *McGovern v. City of Minneapolis*, No. C5–91–37, 1991 WL 109240 (Minn.App. June 25, 1991), *pet. for rev. granted* (Minn. Aug. 29, 1991). The supreme court, holding all issues reviewable, remanded the case for further proceedings. *McGovern v. City of Minneapolis*, 475 N.W.2d 71, 73 (Minn. 1991). Upon further review, we affirm in part, reverse in part, and remand.

### FACTS

On January 18 and January 26, 1988, police executed "no knock" search warrants on a suspected crack-cocaine house at 2218 Golden Valley Road. The police used a front end loader to gain entry through an exterior wall and a window. The forced entry caused extensive damage to the structure. Respondents are the owners of the building and bring this claim for money damages. At this point, no issue has been raised as to their complicity, if any, in the illegal activities going on in their building.

To justify the warrants, the police produce the following: complaints had been received regarding the sale of illegal drugs at 2218 Golden Valley Road. On December 23, 1987, a search warrant was executed on property adjoining 2218 Golden Valley Road. At this time, the occupants of 2218 Golden Valley Road, although not then subject to a search, were observed hurriedly leaving the house with the doors wide open. Sergeant Nordine (one of the named defendants in this case) investigated. Nordine observed 2218 Golden Valley Road to be a virtual fortress, and some weapons were found outside the building. He found the exterior doors and casings were steel and the windows were barricaded with one to two sets of metal burglar bars. Doors were operable only from the inside due to reinforcement on the inside with horizontal steel bars. Windows were covered with sheets of heavy plywood. Exterior walls were fortified with wooden boards and cyclone fencing which had been bolted to the side walls of the building. Additionally, there were rolls of cyclone fencing up and down the interior stairways.

Subsequently, extensive surveillance of 2218 Golden Valley Road took place. Incidents of suspected drug sales were witnessed. One individual frequenting the premises was recognized by officers as a known drug trafficker who they believed to be armed and dangerous. In the 36 hours immediately preceding the execution of the first warrant on January 18, 1988, a confidential informant approached the building and observed apparent crack-cocaine sales.

Officers sought and obtained a "no knock" search warrant based on their observations and the information provided by the confidential informant. Because 2218 was so heavily fortified and the occupants were presumably armed, officers involved in the execution of the search warrant felt that traditional methods of entry through doors and windows would not be safe. It was determined that safety of the officers was best served by utilizing the element of surprise. They decided upon forced entry through an exterior wall.

A front end loader was used to create a 10 foot hole at the southeast corner of the building. This location was chosen because officers believed the room to be unoccupied, and the wall was not a load bearing wall. The Minneapolis police department's high risk warrant team entered through the hole and apprehended three suspects inside the building. A search was conducted, and narcotics and weapons were recovered. City employees covered the hole with plywood sheets following the search.

Despite the raid on January 18, drug trafficking at 2218 Golden Valley Road continued. A second "no knock" search warrant was sought and granted. On January 26, the high risk warrant team again executed a warrant. Because the building remained in its fortified condition, the front end loader now was used to knock out a picture window for entry. This time two suspects were apprehended, and a search

recovered more drugs and money. Following this search, city employees covered the window with sheets of plywood.

Respondents filed suit, seeking to recover for the damage to their rental property caused when the "no knock" search warrants were executed by police. This appeal is from the trial court's denial of appellants' motion for summary judgment. Appellants' motion was based on the grounds that they enjoyed "qualified" immunity, "official" immunity, and "discretionary" immunity, and that as a matter of law, the damage to respondents' rental property was not compensable as a taking of property for public use. We affirm in part, reverse in part, and remand for proceedings consistent with this opinion.

### ISSUES

1. Did the trial court err by denying summary judgment for appellants on the basis of qualified immunity?

2. Did the trial court err by denying summary judgment for appellants on the basis of official immunity?

3. Did the trial court err by denying summary judgment for appellants on the basis of discretionary function immunity?

4. Is damage to respondents' property by law enforcement officials apprehending criminal suspects a compensable constitutional taking?

### ANALYSIS

 The denial of a defense motion for summary judgment based on federal and/or nonfederal doctrines of immunity is immediately appealable. *McGovern v. City of Minneapolis*, 475 N.W.2d 71, 73 (Minn. 1991). Upon review of a summary judgment motion, the function of this court is to determine whether genuine issues of material fact exist and whether the trial court erred in its application of the law. *Offerdahl v. University of Minnesota Hosps. & Clinics*, 426 N.W.2d 425, 427 (Minn.1988). This court need not defer to the trial court's conclusions of law. *Frost–Benco Elec. Ass'n v. Minnesota Pub. Util. Comm'n*, 358 N.W.2d 639, 642 (Minn.1984).

### I.

#### Qualified immunity

The individual officers argue they are entitled to qualified immunity against respondents' claims under 42 U.S.C. § 1983. We agree. "Qualified or 'good faith' immunity is an affirmative defense available to public officials sued for damages under 42 U.S.C. § 1983." *Elwood v. County of Rice*, 423 N.W.2d 671, 674 (Minn.1988) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 815, 102 S.Ct. 2727, 2736, 73 L.Ed.2d 396 (1982)). The existence of qualified immunity is purely a question of law. *Id.* at 675; *see also Johnson v. Morris*, 453 N.W.2d 31, 40 (Minn.1990) (issue of qualified immunity is appropriately resolved on summary judgment); *Reuter v. City of New Hope*, 449 N.W.2d 745, 749 (Minn.App.1990) (summary judgment is the most appropriate means for addressing issue of qualified immunity), *pet. for rev. denied* (Minn. Feb. 28, 1990).

 Whether qualified immunity exists turns on whether the officials violated clearly-established statutory or constitutional rights, the existence of which a reasonable person would have known. *Elwood*, 423 N.W.2d at 674–75. The inquiry is confined to a determination of whether a reasonably well-trained officer would have known the act was in violation of those rights. *Id.* at 675. Qualified immunity should be recognized if officers of reasonable competence could disagree on this issue. *Id.* Where fourth amendment rights are at issue, exigent circumstances might justify an otherwise unlawful entry. *Id.* at 676.

> In determining whether exigent circumstances could exist, we consider the totality of the circumstances. * * * Emergency situations, such as the need to protect or preserve life or avoid serious injury, can justify police conduct that would otherwise be unlawful.

*Id.* (citations omitted).

 Because of the fortress-like condition of the premises, the likely presence of weapons, and the need to safeguard the

lives of officers, suspects, and any bystanders, exigent circumstances justified the mode of entry chosen by the officers. Respondents submitted no evidence to substantiate their assertions that the officers acted unreasonably in the execution of the warrants. The fortified conditions of the premises made a normal entry through a door or window impractical. Respondents urge that only literal compliance with the language of Minn.Stat. § 629.33 (1988) (officers may use force to break through a "door" or "window" to execute a warrant) can form the basis of a proper entry. We disagree. We do not find section 629.33 mandates entry "only" through doors or windows. We do not find the first entry through a wall per se illegal simply because it wasn't technically through a door or a window. The record contains sufficient evidence that it was in the best interests of preserving life and preventing serious injury to make the surprise entry through a wall. The form of entry becomes a question of common sense and judgment, and here good judgment was used.

Based on the record, we hold that qualified immunity exists as a matter of law. We reverse the denial of appellants' motion for summary judgment on this issue.

## II.

### Official immunity

 To have official immunity, the challenged acts must have occurred in the exercise of the officers' discretion, and the officers must not have committed a willful or malicious wrong. *Elwood*, 423 N.W.2d at 677. Police officers acting in emergency situations are often called upon to exercise discretion which would entitle them to official immunity. *See id.* at 678–79; *see also Reuter*, 449 N.W.2d at 751. We find the officers here were exercising judgment and discretion when they executed the high risk warrants. Respondents presented no evidence to show the officers acted in a willful or malicious manner. Appellants are entitled to official immunity, and we reverse the denial of appellants' motion for summary judgment on this issue.

## III.

### Discretionary function immunity

 Minn.Stat. § 466.03, subd. 6 (1988) provides that municipalities shall be immune from

> [a]ny claim based upon the performance or the failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused.

In determining whether discretionary function immunity applies, the critical inquiry is "whether the challenged governmental conduct involved a balancing of policy objectives." *Nusbaum v. County of Blue Earth*, 422 N.W.2d 713, 722 (Minn.1988).

Execution of the "no knock" search warrants in this case involved consideration of important policy objectives: effective law enforcement; preservation of life; prevention of serious injury; and minimal property damage. After a thoughtful and careful balance of policy considerations has been struck, it should not be disturbed by judicial second-guessing. *See id.* at 718. In light of the policy concerns, we find discretionary function immunity applies to the execution of the warrants. We reverse the denial of appellants' motion for summary judgment on this issue.

## IV.

### Compensable taking

 In the recent decision of *Wegner v. Milwaukee Mut. Ins. Co.*, 479 N.W.2d 38, 41 (Minn.1991), the supreme court held "where an innocent third party's property is damaged by the police in the course of apprehending a suspect, that property is damaged within the meaning of the constitution." In *Wegner*, extensive damage was caused to a private citizen's home when police officers delivered chemical munitions into the home in an attempt to expel two fleeing felons who had taken refuge in the home. *Id.* at 40. Rejecting application of the doctrine of public necessity, the court stated "Once a 'taking' is found, compensation is required by operation of law." *Id.* at 42.

■ The court's decision was based on basic notions of fairness and justice: It would be unfair to force an innocent person to bear the entire cost of a benefit conferred upon the community as a whole, namely the apprehension of a dangerous felon. *Id.* at 42. The court went on to note that although the city is liable, the individual police officers, who were acting in the public interest, cannot be held personally liable. *Id.* at 42.

It is undisputed the police intentionally used a front end loader to crash through a wall of the house to gain entry. It is clear the damage to the house was inflicted during the course of a forced entry into a suspected crack cocaine house for the purpose of apprehending suspects and gathering evidence. This intentional entry was for a public purpose within the meaning of the constitution.[1] *See id.* at 42. On this record, it is unnecessary to remand for a determination of whether the police intentionally damaged the house for a public use. They did, and pursuant to *Wegner*, it became a compensable taking for public use.

There is no stipulation in the record that respondent landlords are innocent third parties. No inference has been raised at this point, and we make no such suggestion that they are or otherwise. If the landlords are innocent third parties, they are entitled to compensation as a matter of law pursuant to *Wegner*. However, *Wegner* does not require that respondents be compensated for damages to the house if they were involved in the criminal activity. This determination presents an issue of fact. If decided in respondents' favor, only damages remained to be determined.

We affirm the trial court's denial of appellant city's motion for summary judgment on the issue of compensable taking. We remand for further proceedings pursuant to *Wegner* to determine whether respondents were innocent third parties, and if so, the amount of their damages. As to the individual officers, we reverse the denial of their motion for summary judgment

and find in their favor. *See id.* at 42 ("we hold that the individual police officers, who were acting in the public interest, cannot be held personally liable").

## DECISION

Appellants were entitled to summary judgment on the basis of qualified immunity, official immunity, and discretionary function immunity. The trial court erred in denying those motions.

The trial court properly denied appellant city's motion for summary judgment on the issue of compensable taking. This is a compensable taking if the damaged property belongs to innocent third parties.

Even if the fact determination shows a compensable taking, the individual officers acting in good faith and for a public use are not personally liable for the taking.

Affirmed in part, reversed in part, and remanded.

---

1. "Private property shall not be taken, destroyed or damaged for public use without just compensation therefor, first paid or secured." Minn. Const. art. 1, § 13.