Warren E. JOHNSON, et al., Appellants,

v.

**COUNTY OF DAKOTA,
et al., Respondents.**

No. C8-93-1400.

Court of Appeals of Minnesota.

Jan. 4, 1994.

Richard Baldwin, St. Paul, for appellants.

James C. Backstrom, Dakota County Atty., Kenneth A. Malvey, Asst. County Atty., Hastings, for respondents.

Considered and decided by SCHUMACHER, P.J., and PARKER and FLEMING,* JJ.

## OPINION

FLEMING, Judge.

Appellants challenge the grant of summary judgment for respondents on the basis of official immunity following the erroneous execution of a search warrant. We affirm.

## FACTS

On December 13, 1989, the Dakota County Sheriff's Department was notified that a storage locker full of marijuana had been discovered at the Minikahda Mini Storage in South Saint Paul. Sheriff's Deputy Steven Theriault investigated the case.

Theriault's investigation revealed that a Wayne Johnson was listed as the lessee on the storage locker lease agreement. The address and driver license number the lessee provided were fictitious. The work phone

number that was listed belonged to the residence of a G.F. Kinderman. The name Susan Johnson was provided as an alternate contact at an address and telephone number that was listed to an Irene Havens.

A South St. Paul Police Department detective called Havens and asked to speak with Susan Johnson. Havens replied that a Susan Johnson did not reside there, but that she had a daughter named Susan. Although Susan denied knowledge of the storage locker when questioned by the detective, she seemed nervous and defensive. The detective then spoke with Havens again, who stated that she did not know a Wayne Johnson but did know a Warren Johnson. She described Warren Johnson as a wealthy man in his late forties who lived in Eagan, wore a wig, drove a Cadillac, and had a wife named Diane.

Authorities also spoke with Patrick Deneen, the employee who transacted the lease agreement. Deneen described the lessee as being in his late forties, 5' 10" to 6' tall, with a stocky build and gray wavy hair. Deneen stated he saw the lessee driving a pickup truck. Authorities concluded this description matched Havens's description of Warren Johnson.

Theriault then looked up Warren Johnson in the telephone directory and found a person by that name on Oak Park Lane in Burnsville. Theriault learned Warren Johnson's birth date was January 23, 1940 from a previously issued traffic citation. Theriault contacted the Minnesota Department of Motor Vehicles and confirmed that Warren Johnson lived on Oak Park Lane in Burnsville. Warren Johnson's drivers licenses described him as 5' 11" tall and weighing 190 pounds. Warren Johnson was also listed as the owner of a 1986 Cadillac and a 1980 pickup truck. Surveillance of the Johnson home confirmed Johnson's ownership of these two vehicles.

A check on Warren Johnson revealed that he had no criminal record. Theriault did find, however, that the name William Eugene

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

Johnson was used as an alias by a Gary Gene Kinderman. A criminal history check of Kinderman was then conducted. Police records revealed Kinderman was born on January 11, 1940 and described him as 5' 11" tall and weighing 190 pounds with brown hair and brown eyes. The criminal history file described Kinderman as 6' tall and weighing 200 pounds. Kinderman had a lengthy criminal history, including possession of a controlled substance and several other narcotics violations.

Theriault then obtained photos of both Kinderman and Warren Johnson. Kinderman's photos were year-old mug shots taken from police records. Warren Johnson's photo was a ten-year-old driver license photo enlargement. After comparing the photos, Theriault concluded Kinderman and Warren Johnson were the same person.

A photo lineup was then presented to the storage employee, Deneen. The array of seven photos included the picture of Warren Johnson. Theriault deliberately left Kinderman's photo out of the photo lineup to avoid confusing Deneen. Deneen identified Warren Johnson as the lessee, but commented that lessee's hair was thinner and more gray than he thought. In the lineup photo of Warren Johnson, however, it appears he is wearing a wig.

Based upon this information, Theriault applied for a warrant to search Warren Johnson's home. Theriault stated in the accompanying affidavit that he believed "Wayne Johnson is actually a name used by Warren Edward Johnson, who is in reality Gregory Gene Kinderman." Due to his belief that Kinderman and Warren Johnson were the same person, Theriault did not attempt to ascertain Kinderman's whereabouts. The search warrant was issued by the Dakota County District Court on December 13, 1989.

The Burnsville Police Department and the Dakota County Sheriff's Department executed the no-knock warrant at 12:45 a.m. on December 14, 1989. Warren Johnson was questioned as authorities searched the house. Theriault soon suspected that a mistake had been made. Warren Johnson was taken to the Burnsville Police Department for further questioning. After about one hour and 45 minutes, Warren Johnson was taken back to his home and officers explained to him that a mistake had been made. The search of the Johnson home revealed no evidence of any illegal activity. The parties agree that Warren Johnson is in no way connected with the marijuana found in the storage locker.

Warren Johnson brought a section 1983 action in federal district court in June 1990 against Dakota County. In February 1992, the court granted summary judgment for Dakota County. In dicta, however, the court found that the chain of coincidences relied upon by Dakota County did not give rise to a fair probability that contraband or other evidence of criminal activity would be found in Warren Johnson's home. Thus, the court concluded the search warrant was issued without probable cause.

Warren Johnson, his wife Diane Johnson, and their son, Warren Johnson, Jr., (appellants) commenced the present state court action in March 1992 against respondents Theriault, Dakota County Sheriff Rod Boyd and Dakota County. Appellants asserted claims for negligence, false arrest, false imprisonment, intentional infliction of emotional distress and negligent infliction of emotional distress. The district court granted respondents summary judgment on April 12, 1993, concluding that all claims were barred by the doctrine of official immunity. The court stated:

> [Appellants] have not shown that the Deputy Sheriff's actions were willful or malicious, or that he was motivated by ill-will at any stage of the investigation which led up to the procurement of the search warrant.

Judgment was entered on April 13, 1993, and this appeal followed.

## ISSUE

Did the trial court err in determining that a peace officer who obtains and executes a search warrant following an incompetent or incomplete investigation is protected by the doctrine of official immunity?

## ANALYSIS

■ On appeal from summary judgment, the role of the reviewing court is to review the record for the purpose of answering two questions: (1) whether there are any issues of material fact and (2) whether the trial court erred in its application of the law. *Offerdahl v. University of Minn. Hosps. & Clinics,* 426 N.W.2d 425, 427 (Minn.1988). Summary judgment is proper when no material issues of fact exist and one party is entitled to judgment as a matter of law. Minn.R.Civ.P. 56.03. The evidence must be viewed in a light most favorable to the nonmoving party. *See Hauser v. Mealey,* 263 N.W.2d 803, 805 n. 1 (Minn.1978).

■ The doctrine of official immunity protects from personal liability a public official charged by law with duties that call for the exercise of judgment or discretion unless the official is guilty of a willful or malicious wrong. *Rico v. State,* 472 N.W.2d 100, 106–07 (Minn.1991). Questions of immunity should be resolved at the earliest possible stage of the litigation. *See Johnson v. Morris,* 453 N.W.2d 31, 40 (Minn.1990).

■ In defining the scope of official immunity, the supreme court distinguishes between discretionary duties, which are immunized, and ministerial duties, for which the officer remains liable. *Rico,* 472 N.W.2d at 107. An official's duty is ministerial when it is absolute, certain and imperative, and involves merely the execution of a specific duty arising from fixed and designated facts. *Id.* Peace officers charged with the duty to prevent crime and enforce the laws, "are not purely 'ministerial officers,' in that many of their duties are of an 'executive character involving the exercise of discretion.'" *Elwood v. County of Rice,* 423 N.W.2d 671, 678 (Minn.1988) (quoting *Cook v. Trovatten,* 200 Minn. 221, 224, 274 N.W. 165, 167 (1937)). Absent a willful or malicious wrong, official immunity will protect the officer's actions. *See McGovern v. City of Minneapolis,* 480 N.W.2d 121, 126 (Minn.App.1992) (official immunity shielded peace officers from liability following the execution of a no-knock search warrant where entry into home was gained via a front-end loader through an exterior wall), *pet. for rev. denied* (Minn. Feb. 27, 1992).

■ Whether a peace officer's conduct merits immunity nevertheless turns on the facts of each case. *Elwood,* 423 N.W.2d at 678. Discretionary conduct is clearly not protected if the official committed a willful or malicious wrong. *Id.* at 679. Therefore, the central issue in this case is, if a genuine issue of material fact exists, whether the investigation leading to the erroneous execution of the search warrant rose to the level of a willful or malicious wrong. In the absence of willful or malicious conduct, respondents are entitled to summary judgment on the basis of official immunity.

The supreme court has determined that in the official immunity context, willful and malicious are synonymous. *Rico,* 472 N.W.2d at 107. Malice means

> nothing more than the intentional doing of a wrongful act without legal justification or excuse, or, otherwise stated, the willful violation of a known right.

*Id.* (quoting *Carnes v. St. Paul Union Stockyards Co.,* 164 Minn. 457, 462, 205 N.W. 630, 631 (1925)). Under this definition, appellants contend respondents committed a willful or malicious act. First, there was an intentional act because the peace officers intended to execute the search warrant. And second, appellants contend the investigation was so grossly incomplete and inadequate that the execution of the search warrant was a wrongful act without legal justification.

Under appellants' theory, respondents' actions could be deemed to be intentional or willful. But the willful or malicious wrong exception to official immunity contemplates something more. The defendant must have reason to know that the challenged conduct is prohibited. *Rico,* 472 N.W.2d at 107. The willful or malicious wrong exception to official immunity

> does not impose liability merely because an official *intentionally* commits an act that a court or jury subsequently determines is wrong. Instead, the exception anticipates liability only when an official intentionally

commits an act that he or she has reason to believe is prohibited.

*Id.* (emphasis in original).

Typically, the doctrine of official immunity has been applied to protect honest law enforcement efforts. *See, e.g., Reuter v. City of New Hope,* 449 N.W.2d 745, 751 (Minn.App. 1990) (peace officers entitled to official immunity where they placed good-faith emergency medical hold on woman who they believed was mentally unbalanced after encountering her in a suspicious vehicle), *pet. for rev. denied* (Minn. Feb. 28, 1990). Official immunity, however, is not intended to shield police brutality. *Elwood,* 423 N.W.2d at 678; *see, e.g., Gasparre v. City of St. Paul,* 501 N.W.2d 683, 687 (Minn.App.1993) (summary judgment on the basis of official immunity improper where there is a genuine issue of material fact whether peace officer acted maliciously in twisting and fracturing plaintiff's arm).

We view the facts of this case in a light most favorable to appellants, and we will assume for purposes of this appeal that the investigation was incompetent and incomplete and that the search warrant was issued without probable cause. Even under this assumption, no reasonable jury could find that respondents acted with bad faith or malicious intent.

There is no evidence that peace officers believed any of the information in the search warrant affidavit to be false. Had the search warrant been obtained on the basis of statements that peace officers knew were false, then a genuine issue of material fact would arise as to whether the officers acted with malice. In this case, however, nothing in appellants' version of the facts suggests other than an honest law enforcement effort by peace officers faced with uncertain circumstances. There are no allegations of police brutality.

Clearly, the officers thought they were conducting a search of the home of a person who was suspected of narcotics dealings. At worst, the record indicates an incomplete or incompetent investigation by peace officers who reasonably, if mistakenly, believed their actions were necessary to effect a narcotics arrest. There is no evidence that any peace officer intentionally committed an act that he or she had reason to believe was prohibited. Therefore, the mistake in this case simply does not rise to the level of malice. Accordingly, under these circumstances, official immunity protects the peace officers from liability.

## DECISION

Appellants have failed to present any evidence that respondents acted in a willful or malicious manner. Therefore, the district court properly granted respondents summary judgment on the basis of official immunity.

**Affirmed.**