Scott and Laurie LARSEN, individually and as parents and natural guardians for Michael Larsen, a minor, Respondents,

v.

WRIGHT COUNTY HUMAN SERVICE AGENCY–DAY CARE DIVISION, Appellant.

No. C5–94–1297.

Court of Appeals of Minnesota.

Jan. 3, 1995.

Review Denied March 14, 1995.

Russell H. Crowder, William F. Huefner, Barna, Guzy & Steffen, Ltd., Minneapolis, for respondents.

Roger L. Rowlette, Michelle A. Gill, Robert G. Haugen, Johnson & Lindberg, P.A., Minneapolis, for appellant.

Considered and decided by FORSBERG, P.J., and HUSPENI and DAVIES, JJ.

## OPINION

DAVIES, Judge.

Respondents' son was allegedly injured while in the care of an uninsured day-care provider. After first suing the day-care provider and upon discovering the provider was without insurance, respondents sued appellant Wright County for wrongful licensing. The county appeals the denial of its motion for summary judgment. We reverse.

## FACTS

In November 1991, Carol Menth sought to renew her license to operate a day-care center in her home. The "relicensing review" form asked, "Do you carry day care liability insurance?" Menth wrote "no" in the space provided. The question then stated:

> If you have liability coverage of less than $100,000 per person and $250,000 per occurrence, *you shall give written notice* of the level of liability coverage to parents of all children in care prior to admission or when there is a change in the amount of insurance coverage. *The parents have been notified:* ＿＿ YES ＿＿ NO ＿＿ Does not apply.

(Emphasis added.) Although the parents had not been notified, Menth indicated that she had notified the parents as required by licensing rules. Respondent Wright County subsequently relicensed Menth without examining her files.

In December 1991, respondents Scott and Laurie Larsen began leaving their infant son, Michael, at Menth's day-care center. On the afternoon of January 7, 1992, when Laurie Larsen picked up Michael from the Menth's, he appeared "glassy-eyed" and lethargic. Doctors later diagnosed Michael as suffering from "shaken baby syndrome."

In January 1993, the Larsens sued Menth, alleging negligence, on behalf of Michael. In September 1993, the Larsens amended their complaint to allege that Wright County wrongfully renewed Menth's license without first inspecting her files—thus failing to discover that Menth had never sent a "no-insurance" notice to each parent. Wright County moved for summary judgment, asserting both immunity and failure to state a

tort claim. The motion was denied. This appeal followed.

## ISSUE

May a county be held liable for failing to inspect a day-care provider's files regarding insurance?

## ANALYSIS

■ The denial of a defense motion for summary judgment based on immunity is immediately appealable. *McGovern v. City of Minneapolis,* 480 N.W.2d 121, 125 (Minn. App.1992), *pet. for rev. denied* (Minn. Feb. 27, 1992). Other issues may also be reviewed in the interests of justice and judicial economy. *Soucek v. Banham,* 503 N.W.2d 153, 163 (Minn.App.1993) (citing *Hunt v. Nevada State Bank,* 285 Minn. 77, 89, 172 N.W.2d 292, 300 (1969), and Minn.R.Civ.App.P. 103.04).

Because the underlying statute does not explicitly or implicitly establish a cause of action on which the claim may be based, which establishes an alternative basis for summary judgment, we choose not to address the immunity issue.

A day-care provider must either have bodily injury liability insurance of at least $100,-000 per person and $250,000 per occurrence or give written notice to all parents that it lacks such insurance. Minn.R. 9502.0355, subpt. 4 (1993). The provider must also keep information relating to the "no-insurance" notice in each child's file. *Id.;* Minn.R. 9502.0405, subpt. 4 (1993). Before issuing a day-care provider license, the commissioner (or here, the county as agent) must inspect the program, including the provider's "records and documents." Minn.Stat. § 245A.04, subd. 4(a) (1992).

■ The licensing statute does not suggest that the county becomes the de facto insurer simply because the county fails during licensing procedures to discover the provider's lack of insurance. And we decline to extend court-imposed faulty-inspection liability to cases where, as here, the county is being sued on the ground that a child's injury will go uncompensated. *Cf. Andrade v. Ellefson,* 391 N.W.2d 836, 841–42 (Minn.1986)

(state has special duty to protect children from physical or sexual abuse). We hold that municipal liability for faulty inspection only arises when the faulty inspection allows a hazard to continue that directly invades an individual's personal or property rights.

In *Andrade,* the county was sued for negligence in licensing a day-care provider despite the county's knowledge of overcrowding. *Id.* at 841–42. Although the provider in *Andrade* was licensed to care for only five children, investigators had seen up to 13 children in the "hot, dark, and overcrowded" house. *Id.* at 839. Furthermore, a county investigator had seen only two caretakers present—one of whom was mentally retarded—to care for the children, six of whom were under 13 months old. *Andrade v. Ellefson,* 391 N.W.2d 836, 844 (Minn.1986) (Wahl, J., concurring). Here, in contrast, the county is not being sued because the child's personal or property rights were invaded. Rather, this case is based solely on the "no-insurance" loss. We accordingly reverse the trial court's denial of the county's motion for summary judgment.

■ In arriving at our decision, we note that a statute does not give rise to a civil cause of action unless it imposes liability explicitly or by clear implication. *Semrad v. Edina Realty, Inc.,* 493 N.W.2d 528, 532 (Minn.1992) (Real Estate Brokers Act does not provide private cause of action); *Larson v. Dunn,* 460 N.W.2d 39, 47 n. 4 (Minn.1990) (criminal statute generally does not give rise to civil cause of action); *Iacona v. Schrupp,* 509 N.W.2d 185, 187 (Minn.App.1993) (no private cause of action for violation of statute requiring interstate motor carriers to comply with federal motor carrier safety regulations). Here, there is no express mention in section 245A.04 of a civil cause of action for a failure to inspect a day-care provider's insurance records, nor is a civil action implied by the statutory language.

This court considered a similar claim in *Bruegger v. Faribault County Sheriff's Dep't,* 486 N.W.2d 463 (Minn.App.1992), *aff'd,* 497 N.W.2d 260 (Minn.1993). In *Bruegger,* a child's parents sought damages from the county for the sheriff's failure to inform them

that benefits were available under the Crime Victims Reparations Act. *Id.* at 464. On appeal, this court affirmed summary judgment for the county on the ground that the Crime Victims Reparations Act does not provide a civil remedy for failure to give notice. *Id.* at 465. Specifically, this court declined to find liability because

> a proper level of judicial restraint militates against declaration of a new form of civil liability not clearly declared by the legislature.

*Id.* at 466.

The same reason applies here; the file-review provision does not mention any penalty for failing to examine records and principles of judicial restraint deter us from creating a new cause of action not expressed or implied by the legislature.

### DECISION

The trial court erred as a matter of law in denying the county's motion for summary judgment.

**Reversed.**