Paulette **PAHNKE, Individually and as Parent and Natural Guardian of Brittany Newman, Alyssa Newman and Michael Newman, Minors, Appellant,**

v.

**ANDERSON MOVING AND STORAGE, Respondent,**

**Home Apartment Development, LLC, Respondent,**

**County of Houston, et al., Respondents,**

**City of La Crescent, et al., Respondents.**

No. A05–2401.

Court of Appeals of Minnesota.

Sept. 12, 2006.

William L. French, Jeffrey A. Hanson, Hanson Law Firm, Rochester, MN, for appellants.

Stephen G. Andersen, Ratwick Roszak & Maloney, P.A., Minneapolis, MN, for respondent Anderson Moving and Storage.

Thomas A. Gilligan, Murnane Brandt, St. Paul, MN, for respondent Home Apartment Development, LLC.

Dyan J. Ebert, James S. McAlpine, Quinlivan & Hughes, P.A., St. Cloud, MN, for respondents County of Houston, et. al.

Jon K. Iverson, Susan M. Tindal, Iverson Reuvers, LLC, Bloomington, MN, for respondents City of La Crescent, et. al.

Considered and decided by ROSS, Presiding Judge; SHUMAKER, Judge; and WRIGHT, Judge.

## OPINION

ROSS, Judge.

Appellant Paulette Pahnke filed an action in district court alleging that law-enforcement officers committed various torts by violating Minnesota Statutes section 504B.365 when they executed a court order to remove her from an apartment that she was renting and did not allow her 24 hours to vacate. The district court granted the officers' request for partial summary judgment based on official immunity, and it awarded partial summary judgment to their employers, respondents County of Houston and City of La Crescent, based on vicarious official immunity. The district court determined that disputed material facts prevent awarding the county summary judgment on Pahnke's remaining claims. Pahnke appeals the district court's award of partial summary judgment, and Houston County challenges the denial of complete summary judgment. Because the officers are immune from liability for executing the district court's facially valid order, we affirm the district court's decision to grant partial summary judgment. Because the district court denied summary judgment on the remaining claims based on existing fact questions, we dismiss the county's challenge to that denial as nonappealable on interlocutory appeal.

## FACTS

In September 2002, Paulette Pahnke rented an apartment from Home Apartment Development, LLC. Pahnke already owed Home Apartment $1,100 in unpaid rent from a previous lease, an amount that she agreed to pay in monthly increments of $200. But Pahnke did not pay $200 in September, and she did not pay her rent in October or November.

Home Apartment brought an unlawful-detainer action against Pahnke, which the district court heard in November 2002. Because Pahnke could not pay her outstanding balance to redeem the property, the court announced that it would issue a writ of recovery of premises and an order to vacate, stayed for seven days. *See* Minn.Stat. § 504B.345, subd. 1(d) (2004) ("[U]pon a showing by the defendant that immediate restitution of the premises would work a substantial hardship upon the defendant or the defendant's family, the court shall stay the writ of recovery of premises and order to vacate for a reasonable period, not to exceed seven days.").

The court expressly clarified that Pahnke had seven days to move.

Eight days later, Pahnke remained in the apartment, and the district court signed the writ of recovery and order to vacate. The language of that writ is the flash point of this dispute. It specifically "commanded [the sheriff] that, taking with [him] the force of the county, if necessary, [he] cause Paulette Pahnke to be immediately removed from the premises, and [Home Apartment] to recover the premises." *See id.* § 504B.361, subd. 1(c) (2004) (providing that writ of recovery may state that the officer executing the order "cause [the tenant] to be immediately removed from the premises"). The Houston County sheriff delegated the execution duty to respondent Deputy Luke Sass, who asked respondent Bill Hargrove, a police officer in La Crescent, to assist. When the two officers arrived at Pahnke's apartment, Pahnke and several children were celebrating Pahnke's daughter's birthday.

Pahnke alleges that she attempted to show Deputy Sass a tenants' rights handbook that summarizes the law of eviction and to explain that he lacked authority to evict her immediately. The deputy testified in a deposition that because the writ and order expressly commanded removal "immediately," he did not consider Pahnke's handbook. Pahnke peacefully vacated the premises.

Pahnke brought this action in district court claiming violations of federal and state law based on the eviction. The defendants removed the action to federal district court, and the federal court dismissed the federal claims and remanded the matter to Minnesota district court. The deputy, county, police officer, and city moved for summary judgment, arguing that official immunity barred Pahnke's claims. The district court agreed and granted summary judgment on all claims except claims of breach of contract and promissory estoppel against the county. Pahnke now appeals, challenging the grant of partial summary judgment. The county filed a notice of review and challenges the denial of summary judgment on the remaining claims.

## ISSUES

I. Does immunity protect law-enforcement officers and their employers from liability when the officers execute a judicial order according to the order's exact terms?

II. Is denial of summary judgment on grounds of governmental immunity appealable when the district court based its denial on the existence of disputed material facts?

## ANALYSIS

### I

On Pahnke's appeal from summary judgment, this court asks whether there are genuine issues of material fact and whether the district court erred in applying the law. *See State by Cooper v. French,* 460 N.W.2d 2, 4 (Minn.1990). The district court granted summary judgment to Deputy Sass and Officer Hargrove on the ground that they are protected from liability by official immunity and to the county and city on the ground that they are consequently protected from liability by vicarious official immunity. The district court also noted that even if the officers are not entitled to official immunity, their duty to render "unquestioning obedience" in executing the district court's order protects them from liability. Pahnke's appeal challenges those determinations, asserting that the district court misapplied the law and identifying disputed facts that

she contends are material to the immunity decision.

■ Whether to apply official immunity is a question of law, which this court reviews de novo. *Thompson v. City of Minneapolis,* 707 N.W.2d 669, 673 (Minn. 2006). Official immunity shields a public official from personal liability when the official is "charged by law with duties which call for the exercise of his judgment or discretion ... unless he is guilty of a willful or malicious wrong." *Elwood v. County of Rice,* 423 N.W.2d 671, 677 (Minn.1988) (quotation omitted). The purpose of the official-immunity doctrine is to protect public officials "from the fear of personal liability that might deter independent action and impair effective performance of their duties." *Id.* at 678. To determine whether Deputy Sass and Officer Hargrove are protected by official immunity we must therefore identify the specific conduct at issue and then decide whether the conduct is a discretionary or ministerial act. *See Anderson v. Anoka Hennepin Indep. Sch. Dist. 11,* 678 N.W.2d 651, 656 (Minn.2004) (noting importance of identifying specific conduct at issue); *Kari v. City of Maplewood,* 582 N.W.2d 921, 923 (Minn.1998) (distinguishing discretionary from ministerial acts).

The specific conduct Pahnke complained of is Deputy Sass's order to leave her apartment immediately despite the fact that Pahnke presented him with notice of what she urges is her statutory right to a 24–hour deadline for removal. The district court found that *both* Sass and Hargrove served the notice and removed Pahnke from the apartment, and Officer Hargrove does not contend that this finding is erroneous. It is the immediacy of Pahnke's removal by the officers in keeping with the literal direction of the writ and order—not the mere fact of removal—that gives rise to Pahnke's cause of action.

We must therefore decide whether Pahnke's immediate removal consistent with the express declaration of the writ and order is the kind of discretionary act that warrants the protection of official immunity. *See Anderson,* 678 N.W.2d at 656.

■ A nondiscretionary, ministerial duty is one that is "absolute, certain, and imperative, involving merely the execution of a specific duty arising from fixed and designated facts." *Id.* at 659 (quotation omitted). Minnesota appellate courts have recently applied the distinction between discretionary and ministerial duties to various law-enforcement actions. *See, e.g., Mumm v. Mornson,* 708 N.W.2d 475, 492 (Minn.2006) (holding that policy requiring police officers to discontinue vehicular pursuit if they could establish offender's identity imposed a ministerial duty and that officers did not have discretion to ignore the policy); *Thompson,* 707 N.W.2d at 675 (holding that policy requiring officers to use red lights and siren "in a continuous manner" during vehicular pursuit imposed a ministerial duty); *Brown v. City of Bloomington,* 706 N.W.2d 519, 523–24 (Minn.App.2005) (holding that officers' decisions to use less-lethal ammunition and to fire more than one round were discretionary but that department's procedure for making transition from lethal to less-lethal shells when loading weapon imposed a ministerial duty), *review denied* (Minn. Feb. 22, 2006); *Hyatt v. Anoka Police Dep't,* 700 N.W.2d 502, 508 (Minn.App. 2005) (holding that officers' release of police dog to assist in arrest was discretionary act), *review denied* (Minn. Oct. 18, 2005); *Fedke v. City of Chaska,* 685 N.W.2d 725, 730 (Minn.App.2004) (holding that officer's decision during training exercise to place an individual on the ground through a "controlled takedown" was dis-

cretionary act), *review denied* (Minn. Nov. 23, 2004).

◼ We conclude that the officers' duty was ministerial. Deputy Sass considered Pahnke's immediate removal to be a duty that was absolute, certain, and imperative, rather than discretionary. The writ and order directed him to remove Pahnke "immediately," and he testified that, based on the language in the writ and order, "I told her that the [writ and order] stated that she needed to leave immediately.... Immediately is pretty self-explanatory to me. It means right now." The law obligates the sheriff—and in this case these responding officers by delegation—to execute the district court's writ and order, which they interpreted to require immediate removal. *See* Minn.Stat. § 387.03 (2004) (requiring sheriff to execute all writs and orders issued by lawful authority). As Deputy Sass construed the text of the writ and order, directing Pahnke's immediate removal was his ministerial duty.

On its face, Pahnke's argument might be taken to admit that the officers had discretion regarding the timing of execution because she contends that the officers "could have taken any number of actions" while satisfying their duty. But Pahnke clarifies that "[t]he execution of this Writ did not require the use of discretion" and led to a ministerial act because it "leav[es] nothing to the discretion of the official." This assertion, however, rests on her erroneous framing that "the real issue in this case is the apparent conflict between two statutes"—one that provides that an official executing a removal order shall demand that the tenant remove "within 24 hours," and one that authorizes the official to "cause [the tenant] to be immediately removed from the premises." *Compare* Minn.Stat. §§ 504B.365, subd. 1(a) (directing removal "within 24 hours") *with* 504B.361, subd. 1(c) (authorizing removal

"immediately"). The crux of Pahnke's claim is that the officers erroneously interpreted two conflicting statutes that stand in what she calls "apparent conflict" with each other, and that the officers had a nondiscretionary, ministerial duty to execute the writ by ordering her removal within 24 hours.

◼ Whether Pahnke is correct as a matter of law that the officers did not comply with the duty to order removal within 24 hours, or the respondents are correct that the officers did comply with their duty to order immediate removal, the immunity analysis is the same. Ordinarily, it is *non* compliance with a ministerial duty that bars official immunity. *See Anderson*, 678 N.W.2d at 659–60 (discussing cases arising from alleged failure to perform ministerial duty). But official immunity also does not shield an official from liability for a claim that the official has tortiously *complied* with a ministerial duty. "The ministerial-conduct bar to official immunity arises when ... a ministerial duty was either not performed or was performed negligently." *Id.* Therefore, even under the county's position that the officers were compliant with their duty, Pahnke's claim is that the officers tortiously *complied* with their removal duty.

We are similarly not persuaded by respondents' reliance on our decision in *Johnson v. County of Dakota*, 510 N.W.2d 237 (Minn.App.1994). In *Johnson*, we held that police officers who procured and executed a search warrant on allegedly tortious grounds were carrying out a discretionary duty. *Id.* at 240. But *Johnson* concerns materially dissimilar facts. There, officers participated in the allegedly faulty investigation that led to the warrant, which they also procured and executed. Here, the accused officers contributed nothing to procuring the writ, and their only alleged fault is carrying it

out on its exact terms. *Johnson* is therefore inapposite. We conclude that the officers' alleged tortious compliance with their ministerial removal duty is not the type of action that official immunity protects.

■ That official immunity does not protect the officers from liability does not end our consideration of whether their execution of the writ and order can subject them to liability. The district court also indicated that the officers should not be subjected to liability on the ground that they rendered their absolute obedience to the district court in executing its order. We agree.

Without dispute, the officers' execution satisfied the literal language of the writ and order, and, despite their alleged misunderstanding of the possible statutory deadline for the removal, we conclude that the officers cannot be liable for their execution of the writ as a matter of law. In a series of cases dating back 130 years, the supreme court has recognized a form of immunity that arises from an officer's obedience in executing judicial papers that require the officer to seize property or persons. In a claim against a sheriff for executing a writ that was allegedly jurisdictionally invalid, the court in 1876 determined that, because a writ directing the seizure and sale of a debtor's property "was regular on its face," it was "a full protection to the officer executing the process," even if the authoring justice of the peace lacked jurisdiction to execute the writ. *Orr v. Box*, 22 Minn. 485, 486 (1876). Nine years later, the supreme court considered a similar claim regarding the execution of a judgment. It concluded that even if a judgment rested on fraudulent dealing between the parties, "[t]he judgment protects the officer from liability for doing what it commanded him to do," and it held that the officer "incurred no liabili-

ty for executing it according to its terms." *Hill v. Rasicot*, 34 Minn. 270, 271, 25 N.W. 604, 605 (1885). Despite the assumed legal deficiency in the process, "[i]t was not for him to revise the judgment." *Id.* In 1922, the supreme court considered the claim of an owner who challenged a constable's seizure of his automobile. *Whitney v. Welnitz*, 153 Minn. 162, 190 N.W. 57 (1922). The court concluded that "[w]here the writ appears regular in all respects the officer is not required to make inquiry into the sufficiency of the prior proceedings" and the officer therefore has "a full and perfect defense to the action." *Id.* at 166, 190 N.W. at 58.

■ Twenty-one years later, the supreme court declared that "[i]t is the imperative duty of a sheriff to execute the process and orders of a court of competent jurisdiction." *Robinette v. Price*, 214 Minn. 521, 525, 8 N.W.2d 800, 804 (1943). Relying on *Whitney*, the *Robinette* court defined broadly the immunity that arises from an officer's compliance with a judge's express order:

> Unquestioning obedience, without power or right to review or to revise, being the duty of the officer, he is afforded upon grounds of public policy a commensurate protection against personal liability for acts done in the performance of such duty. A sheriff is protected and justified for acts done in executing the process and orders of a court having jurisdiction of the subject matter when the process is regular on its face.

*Id.* at 525–26, 8 N.W.2d at 804. The court later explained further that "[a] sheriff is protected from liability for acts done in executing the process and orders of a court having jurisdiction of the subject matter when the process is fair on its face." *Hoppe v. Klapperich*, 224 Minn. 224, 238, 28 N.W.2d 780, 790 (1947). Finally, in 1971, the supreme court deter-

mined that the district court was compelled to dismiss three police officers from tort claims that challenged the officers' alleged wrongful arrest and false imprisonment based on an arrest warrant that the subject claimed was fraudulently procured by other officers. *Morgan v. McLaughlin,* 290 Minn. 389, 391, 188 N.W.2d 829, 831 (1971). The court held that the officers were "performing an official duty in executing an arrest warrant which was valid on its face and was issued by a court having jurisdiction." *Id.*

In each of these cases, the accused officer might have avoided the alleged wrongful execution had he looked beyond the judicial process into the law or underlying legal proceedings. Similarly here, even assuming Pahnke has accurately reconciled the two "apparent[ly] conflict[ing]" statutory provisions, the officers were not required to look beyond the face of the writ to interpret a common term that literally orders the officers to remove Pahnke immediately, rather than 24 hours later. The writ does not refer to section 504B.365 or otherwise offer any suggestion that the term "immediately" means "within 24 hours." Like the officers in the *Orr* line of cases, Sass and Hargrove reasonably relied on the express direction of the court. Imposing liability would invite police second-guessing of judicial decrees. Rather, obeying the terms of execution affords an officer "a full and perfect defense."

Pahnke asserts that the writ was not regular or valid on its face because its reference to "immediately" is not understandable "without reference to the controlling statute." But deeming a writ "irregular" whenever one must look beyond it to discern the inapplicability of its plain terms would eviscerate the protection afforded to an officer by his reliance on a facially valid writ. Pahnke attempts to focus the immunity dispute on the inter-

pretation of the two statutes, sections 504B.361, subdivision 1, and 504B.365, subdivision 1(a). This focus is misplaced. Pahnke first argues that the two statutes stand in "apparent conflict," but at oral argument Pahnke's counsel maintained that the two provisions *unambiguously* require an officer executing a writ to allow a tenant 24 hours to vacate. When read together, the statutes are facially unclear; one allows for immediate removal and the other for removal within 24 hours. Neither expressly defines "immediately," and without limiting or clarifying language, section 305B.361 opens itself to the construction that "immediately" means instantly. *See Black's Law Dictionary* 764 (8th ed.2004) (defining "immediate" as "[o]ccurring without delay" and "instant"); *see also American Heritage Dictionary* 877 (4th ed.2000) (defining "immediately" as "without delay" and "directly"). Pahnke urges that we reconcile the different temporal references by reading the two statutes together, so that the term "immediately" in section 504B.361, subdivision 1, is clarified by section 504B.365, subdivision 1, to mean "within 24 hours." This statutory construction may be plausible, but it is not relevant to our immunity analysis as it regards execution of the writ.

The officers had an imperative duty to execute the writ, which was valid and clear on its face and issued by a court of competent jurisdiction, and they executed it on its explicit terms. *See* Minn.Stat. § 387.03 (requiring sheriffs to "execute all processes, writs, precepts, and orders issued or made by lawful authority"). The officers are therefore immune from tort liability for executing the writ in this manner.

Finally, Pahnke argues that because she tried to give Deputy Sass a 1998 document entitled "Tenants' Rights in Minnesota," which she contends would have put the officers on notice that "imme-

diately" should not mean, literally, "immediately," a fact question arises regarding whether malice should prevent immunity from attaching. We do not agree that Pahnke has identified a material fact dispute. Regarding the related concept of official immunity, "[t]he willful or malicious wrong exception ... does not impose liability merely because an official *intentionally* commits an act that a court or jury subsequently determines is wrong. Instead, the exception anticipates liability only when an official intentionally commits an act that he or she has reason to believe is prohibited." *Johnson,* 510 N.W.2d at 240–41 (quotation omitted). Assuming a malice exception exists to bar the immunity that arises from an officer's unquestioning obedience to a judicial order, Pahnke's cited evidence does not constitute malice. The officers were not exhibiting malice by refusing to consider the tenant's or the landlord's representation of the law. It also is not malice to discount any representation that appears inconsistent with the duty to obey a court order on its own, facially valid terms.

■ Because the officers are entitled to immunity, we agree that, as their employers, the county and city are also entitled to vicarious immunity. Although Minnesota courts have not yet addressed vicarious liability as it applies to employers whose employees are not liable under the *Orr* line of cases, we find that the rationale extending immunity to employers in an official-immunity context is equally persuasive in this context.

■ Extending immunity to a governmental employer is a policy question, and when an employee is found to have official immunity, claims against a municipal employer are generally dismissed. *Pletan v. Gaines,* 494 N.W.2d 38, 42 (Minn.1992). Vicarious official immunity protects a government entity from liability based on official immunity because of the inconsistency that would result from imposing liability on a government employer for the same acts for which an employee receives immunity. *Wiederholt v. City of Minneapolis,* 581 N.W.2d 312, 316 (Minn.1998). Absent vicarious immunity, imposing liability on an employer would still require analysis and judgments about the employee's actions. *Pletan,* 494 N.W.2d at 42. This scrutiny would defeat the purpose of immunity, which is to protect an employee "executing the process and orders of a court having jurisdiction ... when the process is fair on its face." *See Hoppe,* 28 N.W.2d at 790 (stating rationale of immunity when executing court order); *see also Pletan,* 494 N.W.2d at 42 (noting that lack of vicarious immunity in official-immunity context defeats purpose of official immunity because liability analysis would still require scrutiny of employee's actions). We therefore hold that the district court appropriately dismissed the related claims against the county and city.[1]

## II

■ The district court denied the county's motion for summary judgment on the contract and promissory estoppel claims, concluding that "whether a contract existed and whether promissory estoppel is appropriate are [fact] questions for the jury." The county challenges the denial, arguing that Pahnke failed to establish a factual basis for the claims.

■ The appeal of the denial is not properly before us. Although an order denying a motion for summary judgment

1. We do not address the respondents' other non-immunity arguments made in support of summary judgment.

based on governmental immunity from suit is appealable, *Anderson v. City of Hopkins,* 393 N.W.2d 363, 364 (Minn.1986), the denial of summary judgment on these claims was based on the existence of disputed facts, not on governmental immunity. Determining whether there is a factual basis for the claims "is unrelated to official immunity and is, therefore, not appealable in an interlocutory appeal." *Carter v. Cole,* 526 N.W.2d 209, 214 (Minn. App.1995) (dismissing police officer's challenge to district court's denial of summary judgment because the denial was unrelated to legal questions on official immunity), *aff'd mem.,* 539 N.W.2d 241 (Minn.1995). We therefore dismiss the county's interlocutory appeal from the district court's denial of its motion.

## DECISION

Although Deputy Sass and Officer Hargrove performed a ministerial function in executing a court order directing Pahnke's immediate removal from her apartment, the officers are immune from civil liability because they executed the order according to its facially valid terms. Because the officers are immune from liability, their employers, Houston County and La Crescent, are entitled to vicarious immunity. The district court therefore properly entered partial summary judgment for Deputy Sass, Officer Hargrove, the county, and the city. The county's appeal from denial of summary judgment on the remaining grounds, however, is not properly before the court on interlocutory appeal because the district court denied summary judgment based on disputed material facts rather than absence of immunity.

**Affirmed in part, appeal dismissed in part.**