Edward J. ANDERSON, individually and
as parent and natural guardian of
Trevor Anderson, a minor, Respon-
dent,

v.

ANOKA HENNEPIN INDEPENDENT
SCHOOL DISTRICT 11, et al.,
Appellants.

No. CO–02–1125.

Supreme Court of Minnesota.

May 6, 2004.

Lawrence M. Rocheford, Jessica E. Schwie, Jardine, Logan & O'Brien, P.L.L.P., Lake Elmo, MN, for Appellants.

Robert N. Edwards, Chtd., Anoka, MN, for Respondent.

Christina L. Clark, St. Paul, MN, for Amicus Curiae Education Minnesota.

Joseph E. Flynn, Jennifer K. Anderson, Knutson, Flynn & Deans, P.A., Mendota

Heights, MN, for Amicus Curiae Minnesota School Board Association.

Gary L. Wilson, Anne E. Workman, Brooke B. Tassoni, Robins, Kaplan, Miller & Ciresi, L.L.P., Minneapolis, MN, for Amicus Curiae Minnesota Trial Lawyers Association.

Paul D. Reuvers, Iverson & Reuvers, LLC, Bloomington, MN, for Amicus Curiae Minnesota Defense Lawyers' Association.

## OPINION

BLATZ, Chief Justice.

Respondent Edward Anderson (hereinafter "respondent"), individually and in his capacity as guardian for his son, Trevor Anderson, sued appellants Paul Peterson and Anoka Hennepin Independent School District 11 (the "district") because of injuries Trevor incurred from an accident in a high school wood shop class taught by Peterson. The district court denied the district's and Peterson's summary judgment motions based on claims of statutory, official and vicarious official immunity and was affirmed by the court of appeals. We conclude that Peterson is protected by common law official immunity and the district is protected by vicarious official immunity. We therefore reverse.

Trevor Anderson was injured in an accident on May 16, 2000, when he was "ripping"[1] 1–½ inch strips of wood on a circular table saw for his Woods II class project, a TV/VCR stand. Trevor was a somewhat experienced woodworker, as he had taken the Woods I course and had worked with various power tools outside of the classroom under the direction and supervision of his father. Trevor's teacher, appellant Peterson, had directed Trevor to rip wood strips with the Biesemeyer blade guard disengaged, and to instead use a "push stick."[2] A "push stick" is a device that allows the operator of a table saw to push pieces of wood through the saw while maintaining a safe distance between the operator's hands and the blade. Peterson watched Trevor cut four or five of the strips and then moved to another part of the classroom while Trevor continued to cut.

After Peterson walked away, Trevor completed pushing a piece of wood through the saw with a push stick. However, a "waste" piece of wood, now resting on the other side of the blade, began to move on the saw table. Trevor reached over the blade with his left hand to move the wood scrap, and as he reached over the blade his left index finger hit the blade, amputating the finger at the knuckle.

Respondent brought this action individually and on behalf of Trevor seeking damages against the district and Peterson for their alleged negligence. Appellants each moved for summary judgment: the district on grounds of statutory immunity under Minn.Stat. § 466.03, subd. 6 (2002) and vicarious official immunity, and Peterson on grounds of common law official immunity. The district court denied summary judgment. The court denied statutory immunity to the district on the basis that the decision not to use the blade guard did not involve social, political or economic policy

---

1. "Ripping" is the cutting of a piece of wood along the grain.

2. A Biesemeyer blade guard is simply a brand name blade guard that is typically more expensive than the blade guard that is furnished with a circular table saw. Coon Rapids High School made the decision to purchase a Biesemeyer blade guard instead of using the blade guard provided with the circular table saw.

considerations. It denied common law official immunity to Peterson relying on *Larson v. Indep. Sch. Dist. No. 314, Braham,* 289 N.W.2d 112 (1979), and therefore denied vicarious official immunity to the district as well.

The court of appeals affirmed. *Anderson v. Anoka Hennepin Ind. Sch. Dist. 11,* 655 N.W.2d 847, 854 (Minn.App. 2003). The court agreed with the district court that statutory immunity is inapplicable because the conduct at issue did not involve the exercise of policy-level discretion. *Id.* at 852. The court also held Peterson was not entitled to common law official immunity because his decisions involving the use of a circular table saw without a blade guard did not concern "policy decisions with broad implications," and consequently held the district was not entitled to vicarious official immunity. *Id.* at 854. Appellants then filed a petition for further review on common law official immunity and vicarious immunity grounds, and we granted review.[3]

 The issues before us are whether the court of appeals erred in affirming denial of summary judgment by holding both that appellant Paul Peterson is not entitled to common law official immunity and that the district is not entitled to vicarious official immunity. While denial of a motion for summary judgment is not ordinarily appealable, an exception to this rule exists when the denial of summary judgment is based on rejection of a statutory or official immunity defense. *E.g., Gleason v. Metro. Council Transit Opera-*

*tions,* 582 N.W.2d 216, 218 (Minn.1998). On review of an order denying summary judgment, this court must determine whether there are genuine issues of material fact and whether the lower court erred in applying the law. *Id.* at 218–219. Immunity is a legal question reviewed de novo. *Id.* at 219.

## I.

 We first address whether Peterson is protected by common law official immunity. As we have explained in numerous cases, the doctrine of common law official immunity provides that "a public official charged by law with duties which call for the exercise of his judgment or discretion is not personally liable to an individual for damages unless he is guilty of a willful or malicious wrong." *Elwood v. Rice County,* 423 N.W.2d 671, 677 (Minn.1988) (quoting *Susla v. State,* 311 Minn. 166, 175, 247 N.W.2d 907, 912 (1976)). The purpose of official immunity is to "protect[ ] public officials from the fear of personal liability that might deter independent action and impair effective performance of their duties." *Id.* at 678 (citing Restatement (Second) of Torts § 895D cmt. B; *Nusbaum v. County of Blue Earth,* 422 N.W.2d 713, 722 (Minn. 1988)). Consistent with this purpose, common law official immunity does not protect officials when they are charged with the execution of ministerial, rather than discretionary, functions, that is, where "independent action" is neither required nor desired.[4]

---

**3.** Appellants did not seek review of the ruling that statutory immunity is inapplicable to the conduct involved; therefore statutory immunity is not at issue here.

**4.** Common law official immunity, which protects public officials from individual liability, must be distinguished from statutory immunity, which is accorded to governmental enti-

ties. The purpose of statutory immunity is to preserve the separation of powers by insulating policy judgments of the other branches of government from review by the courts in tort actions. *Rico v. State,* 472 N.W.2d 100, 104 (Minn.1991). Consistent with that purpose, the reach of statutory immunity has been limited to decisions that involve balancing of policy objectives, such as social, political and

We have frequently reiterated our longstanding definition of a ministerial duty as one that is "absolute, certain, and imperative, involving merely the execution of a specific duty arising from fixed and designated facts." *Wiederholt v. City of Minneapolis*, 581 N.W.2d 312, 315 (Minn. 1998) (quoting *Cook v. Trovatten*, 200 Minn. 221, 224, 274 N.W. 165, 167 (1937) (citation omitted)). Thus, in *Wiederholt* we held that a city sidewalk inspector's duty was ministerial when a city ordinance established "fixed and designated facts," i.e., that protrusion of any sidewalk slab more than one inch above the adjacent slab would require immediate repair. *Id.* at 316. We have also stated that the mere existence of some degree of judgment or discretion will not necessarily confer common law official immunity; rather, the focus is on the nature of the act at issue. *Elwood*, 423 N.W.2d at 677. Accordingly, we have held that official immunity would not apply to a physical education teacher's decision how to teach a gymnastic exercise. *Larson*, 289 N.W.2d at 120.[5]

In determining whether Peterson should be protected by common law official immunity, it is important to identify the specific conduct at issue in the case. *See Gleason*, 582 N.W.2d at 219. Respondent acknowledges that he is not challenging the decisions to teach woodworking, to use power equipment in the course, to allow Trevor to use the table saw, or even to leave Trevor unsupervised to make the remaining rip cuts on his own. Rather, the specific conduct challenged is the decision to instruct Trevor to make the rip cuts with the blade guard disengaged.

Nonetheless, respondent contends that the decision regarding the use of the blade guard was ministerial. In respondent's view, the ministerial nature of the decision is easily discerned by comparison to other decisions that were made relating to the woodworking class, such as whether or not to offer the course, whether to purchase a particular table saw as opposed to another brand, whether to utilize the blade guard that came with the saw or purchase a more expensive Biesemeyer guard, or whether the students in the course should be allowed to operate power equipment. Respondent argues that this group of decisions is clearly policymaking and discretionary and therefore protected by common law official immunity, and in contrast, that the decision to remove the blade guard was not a "policymaking decision," and therefore not protected by official immunity. In essence, respondent argues that because all students were required to build the project in the same manner, i.e., using the circular table saw with the blade guard disengaged, the instruction was ministerial.

The court of appeals agreed that Peterson's actions were ministerial, reasoning:

Here, rather than exercising policymaking power, appellant Paul Peterson only carried out ministerial functions. Although Peterson exercised independent judgment by deciding how to su-

---

economic considerations, at the planning or policy level. *Nusbaum*, 422 N.W.2d at 722. In contrast, common law official immunity applies to discretionary decisions made at the operational level. *Gleason*, 582 N.W.2d at 220.

5. We note that in *Larson*, although we articulated established common law official immunity standards in holding that the teacher's decision was not protected we stated that his

action "did not involve a decision on the policy-making level" and that "the actual teaching is a ministerial function because it involves decisions made at the operational level of conduct." *Larson*, 289 N.W.2d at 120–121. Thus, it appears that we conflated statutory immunity and common law official immunity standards in analyzing a common law official immunity issue.

pervise his classroom and whether to use the blade guard, these are not the type of discretionary decisions afforded immunity. * * *

Although Peterson balanced many different factors in supervising the Woods II classroom, Peterson did not exercise any more discretion then [sic] any other teacher in controlling a classroom—the essence of a ministerial action. Similar to the state employees' removal of a house in *Williamson*, Peterson's teaching duties with regard[ ] to safety were direct and did not involve policy decisions with broad implications.

*Anderson*, 655 N.W.2d at 853–54. The court concluded that the nature and complexity of Peterson's decision-making were not at a level that entitled him to common law official immunity.

Both respondent and the court of appeals appear to suggest that the conduct at issue can only be characterized as discretionary for purposes of common law official immunity if it approaches policy-making level. Specifically, although the court of appeals acknowledged the distinction between the discretion at issue in statutory immunity and common law official immunity analyses, its emphasis on the absence of "policymaking power" and "policy decisions with broad implications" indicates that, as we did in *Larson*, the court of appeals here mistakenly relied on statutory immunity standards in an official immunity analysis.[6] Instead, the focus of common law official immunity is to determine

whether Peterson's actions called for the exercise of discretion at the operational level or instead were ministerial, constituting merely the execution of a specific duty arising from fixed and designated facts.

▇ In fact, the record establishes unequivocally that the decision whether to instruct Trevor to make rip cuts with the blade guard disengaged was dictated by an established protocol[7] that made the decision ministerial from Peterson's perspective. In his affidavit submitted in support of summary judgment, Jon Trost, Department Leader for the Technology Education Department at Coon Rapids High School, stated that the department staff determined the best practice in making rip cuts on wood with a width of four inches or less would be to proceed with the Biesemeyer blade guard up, and therefore disengaged, while simultaneously using a push stick to guide the wood through the saw. The staff determined this to be the best "policy and procedure," rather than leaving the blade guard down and engaged because, in the staff's view, a push stick cannot be used when the guard is down and it is possible for a student's fingers to come within four inches of the blade.

The existence of this protocol was also noted in the affidavit of Michael Lindstrom, the district's Technology Education Facilitator and Assessment Facilitator. Lindstrom averred his familiarity with:

the unwritten policy in the Technical Arts Department at the Coon Rapids

---

6. Moreover, we cannot agree with the generalization expressed by the court of appeals that the exercise of discretion by a teacher in controlling a classroom is "the essence of a ministerial action." *Anderson*, 655 N.W.2d at 854. We also reject the similarly overbroad generalization of the amicus curiae Education Minnesota that virtually every decision a teacher makes is sufficiently discretionary to warrant official immunity. As we have said many times, immunity analysis must focus on

the particular conduct at issue. *Gleason*, 582 N.W.2d at 219.

7. While such a protocol might more commonly be termed a school "policy," and is referred to as such in the parties' briefs, we will use the term "protocol" to avoid confusion with the type of policy-level decisions protected by statutory immunity.

High School whereby persons using the table saw and ripping strips of wood 4 inches or less must use a push stick and occasionally have the Biesemeyer guard up so that the push stick may be used by the operator and the operator can see the piece of wood being cut; this is an accepted safety practice adopted by the faculty at the Coon Rapids High School and is consistent with district practice for technical arts curriculum.

The Woods II "Circular Saw Safety Test," a true or false test, on which students must attain a perfect score before being allowed to operate the circular table saw, reflected this protocol. The test asked if the following statement was true or false: "Absolutely no cutting operation can be performed on the circular saw without the guard over the blade." According to the answer key, the correct answer to the question is "F," indicating "false." Prior to taking the test, students were taught that there are instances, as where a student is ripping a piece of wood less than 4 inches wide, in which the guard should be disengaged and the student should use a push stick to guide the wood.

Further, at his deposition and in his affidavits submitted to the court, Peterson stated that he was aware of the protocol at the time of the accident. In response to being asked in his deposition whether the decision to operate the saw with the guard up at the time of the accident was made by Peterson himself, he answered, "No, this is the way that it is done. It was a decision—I don't know if you want to call it a curriculum decision or a discretionary deci-

sion on the part of the school. It's the way it's done throughout the district." Peterson stated that the original decision regarding blade guards was made "years ago" and that he was aware of the protocol because it was discussed in staff meetings regarding safety policies at the beginning of the school year and throughout the year.

Although respondent disagrees with the substance and underlying safety rationale of this protocol, he offered no evidence that it did not exist or that it did not direct Peterson's actions in supervising Trevor's use of the circular saw to make the rip cuts. The record establishes that there was a protocol in place that required teachers at the Coon Rapids High School to instruct students to disengage the blade guard and use a push stick when making rip cuts on wood less than four inches wide. This protocol governed Peterson's actions at issue in this case and established a duty that was "absolute, certain, and imperative, involving merely execution of a specific duty arising from fixed and designated facts." *Cook v. Trovatten*, 200 Minn. 221, 224, 274 N.W. 165, 167 (1937). Given the protocol, Peterson's decision to instruct Trevor to complete the rip cuts with the blade guard disengaged because the wood strip was less than 4 inches wide was ministerial in nature.[8]

The dissent disagrees with this conclusion that the protocol established a ministerial duty for common law official immunity purposes. Relying on a phrase included in *Cook v. Trovatten*, of what constitutes a ministerial duty, the dissent would define

---

**8.** Respondent contended at oral argument that there was not sufficient evidence of policy-level decision-making to consider this a "policy," but this argument again confuses the statutory immunity standard with the proper common law official immunity standard. On the other hand, apparently attempting to avoid application of the ministerial

label to Peterson's conduct, appellants emphasized that Peterson exercised discretion in deciding to allow Trevor to use the circular saw and to leave him on his own before all the cuts were completed. These decisions are not, however, the focus of respondent's claim, and they are therefore not the focus of this immunity analysis.

ministerial duty narrowly to include only duties "imposed by law," which the dissent construes to mean based on "a statute, ordinance, rule or other official action." However, we have routinely omitted the "positively imposed by law" language in describing what constitutes a ministerial duty. *See, e.g., Gleason,* 582 N.W.2d at 220; *Wiederholt,* 581 N.W.2d at 315–16 (Minn.1998); *S.W. v. Spring Lake Park Sch. Dist. No. 16,* 580 N.W.2d 19, 23 (Minn.1998); *Watson v. Metro. Transit Comm'n,* 553 N.W.2d 406, 414 (Minn.1996); *Elwood,* 423 N.W.2d at 677. Moreover, in applying the standard, we have not required that a duty be imposed by law in order to be ministerial. *See Olson v. Ramsey County,* 509 N.W.2d 368, 373 (Minn.1993) (concluding that implementation of case plan developed by individual social worker ministerial); *Williamson v. Cain,* 310 Minn. 59, 61, 245 N.W.2d 242, 244 (1976) (finding demolition of house ministerial); *Larson,* 289 N.W.2d at 121 (concluding that spotting and teaching a student's gymnastic exercise ministerial). Most important, there is no sound rationale for so limiting the scope of ministerial duties. The definition we have routinely stated is that the duty must be "absolute, certain, and imperative, involving merely the execution of a specific duty arising from fixed and designated facts." *Wiederholt,* 581 N.W.2d at 315 (citations omitted). Beyond satisfying this characterization, it is inherent in the concept of ministerial duty that the duty must dictate the scope of the employee's conduct. Because the common law official immunity analysis always involves evaluation of government employee conduct, that control will most often emanate from a statute, rule, ordinance or other official standard. But there is no logical reason that a sufficiently narrow standard that does not meet an "imposed by law" criterion should not similarly make the conduct ministerial if the employee is bound to follow the standard. *See Cook,* 200 Minn. at 224, 274 N.W. at 167. The record in this case amply establishes that both Peterson and his superiors considered his conduct governed by the departmental protocol, and it therefore created a ministerial duty consistent with our precedent.

Our conclusion that Peterson's conduct was ministerial rather than discretionary does not end the inquiry in these circumstances. Respondent's claim is that Peterson was negligent in allowing Trevor to make the rip cuts without the blade guard in place. Therefore, the ministerial duty that respondent contends should deprive Peterson of common law official immunity—that is, to require the blade guard to remain in place for the rip cuts—is directly contrary to the ministerial duty that in fact existed in the form of the departmental protocol. In other words, the act that respondent alleges was negligent was actually Peterson's compliance with the departmental protocol.

When addressing the discretionary-ministerial dichotomy in the context of common law official immunity in past cases, we have simply stated that immunity is limited to discretionary conduct and is not applicable to ministerial conduct. *See, e.g., Spring Lake Park,* 580 N.W.2d at 23. But in those cases, the liability was alleged to arise from the *failure* to perform a ministerial duty. *See, e.g., Wiederholt,* 581 N.W.2d at 317 (holding that a city sidewalk inspector who failed to perform the ministerial function of ordering immediate repair of a sidewalk as required by a city ordinance was not entitled to common law official immunity); *Olson,* 509 N.W.2d at 373 (concluding that implementation of a case plan for an abused child and his mother was a ministerial duty and common law official immunity would not apply against allegations of negligent implementation of

the plan). We have not previously confronted a situation where, as here, the liability is alleged to arise from *compliance* with a ministerial duty.

Although we have not addressed this situation in the context of common law official immunity, in a case involving statutory immunity we concluded that a challenge to officials' conduct in complying with established policy is a challenge to the policy itself. In *Nusbaum*, 422 N.W.2d at 716, the plaintiff argued, inter alia, that the state should be liable for the conduct of its traffic engineers in failing to post a new speed limit sign at the end of a restricted speed zone. Instead, the engineers had followed a state policy embodied in the state traffic sign manual. *Id.* The court explained:

> Where the state engineers followed that policy, a challenge to their conduct is merely a challenge to the policy. Therefore, Nusbaum's claim based on failure to post a new speed limit sign is precluded because the courts or juries should not be allowed to second-guess the policy decision.

*Id.* at 723. In other words, the court held that where a decision was made at the policy-making level and was therefore protected by statutory immunity, that immunity would not be vitiated by imposing liability alleged to arise from conduct that merely followed the policy.

■■■ We see no reason for a different result when common law official immunity is at issue. Accordingly, we hold that a teacher, like Peterson, does not forfeit official immunity because his or her conduct was ministerial if that ministerial conduct was required by a protocol established through the exercise of discretionary judgment that would itself be protected by official immunity. To hold otherwise would deter teachers from complying with school protocols, forcing them to second-guess such decisions. Moreover, if the adoption of a mandatory protocol had the effect of stripping employees who follow it of common law official immunity because their conduct was therefore ministerial, schools and school districts might be dissuaded from utilizing collective expertise and professional judgment to make discretionary operational decisions in favor of ad hoc decision-making by individual teachers in all circumstances. Importantly, this holding preserves existing case law that denies common law official immunity when the liability is alleged to arise from the failure to perform or from the negligent performance of a ministerial duty.

■■■ Accordingly, that the conduct at issue is ministerial is not necessarily enough to deny official immunity. The ministerial-conduct bar to official immunity arises when the allegation is that a ministerial duty was either not performed or was performed negligently. *See Lodl v. Progressive N. Ins. Co.*, 253 Wis.2d 323, 646 N.W.2d 314, 321 (2002) ("If liability is premised upon the negligent performance (or non-performance) of a ministerial duty imposed by law or government policy, then immunity will not apply."); *Hancock v. W.S. Dakota Juv. Servs. Ctr.*, 647 N.W.2d 722, 725 (S.D.2002) (stating, "[A] state employee who 'fails to perform a merely ministerial duty, is liable for the proximate results of his failure to any person to whom he owes performance of such a duty.'") (citation omitted).[9]

---

9. The dissent rejects the validity of the distinction between a claim that a government employee should be liable for ignoring or negligently performing a ministerial duty and a claim that a government employee should be liable for correctly performing a ministerial duty. Yet in doing so the dissent cites no case in which an employee has been denied common law official immunity and held liable in the latter situation and fails to acknowledge

Because respondent's claim is essentially that Peterson is liable because he followed the departmental protocol, the claim is in reality a challenge to the protocol itself. The question then is whether the adoption of the protocol was discretionary in the sense necessary to give rise to common law official immunity.[10] While respondent contends that the requirement to keep the blade guard in place should be ministerial, it is clear that both the decision to establish a protocol and the decision regarding the substance of the protocol—that is, to require rip cuts on boards less than 4 inches in width to be performed with a push stick and the guard disengaged— involved the exercise of the staff's professional judgment as educators and woodworkers. In fact, at oral argument respondent acknowledged that the required "false" answer, regarding whether the blade guard must be used at all times on the Circular Saw Safety Test, was correct because not all woodcutting procedures could be performed with the blade guard in place. Therefore, professional judgment was required to decide which procedures require the guard and which do not in the first instance. We are not prepared to say that the exercise of that judgment is so ministerial that common law official immunity should not apply.

Although the dissent addresses the issue in the context of the individual conduct of the teacher, the crux of the dissent's opposition to our ruling is that the decision embodied in the protocol, that is, to have the students make rip cuts of less than 4 inches with the blade guard removed, is not entitled to official immunity because it did not involve the exercise of "significant independent judgment." While it is true that not every decision that entails any discretion is entitled to common law official immunity, our cases do not support the dissent's elevation of the test to "significant" independent judgment. The dissent relies primarily on *Terwilliger v. Hennepin County,* 561 N.W.2d 909 (Minn.1997), and *Larson,* but we do not agree that those cases establish a heightened test that would deny common law official immunity for the discretionary decision at issue here. First, as observed at note 5, *supra,* in denying official immunity for individual teaching decisions in *Larson,* we mistakenly applied statutory immunity standards in our analysis. We decline to extrapolate from that analysis, as the dissent would, that the court really meant that teaching decisions are too routine in general to qualify for official immunity. In *Terwilliger* we denied official immunity for a decision that clearly involved the exercise of professional judgment—to treat a mental health patient on an out-patient basis. But in doing so we relied on the fact that the defendants were "only implement[ing] Hennepin County's established public policy." 561 N.W.2d at 913. We also expressed concern about creating a shield against malpractice liability not available to private practitioners. Although the dissent would carry this concern to teachers, whereas the practice of medicine is primarily a private-sector, proprietary activity, teaching, despite the ex-

---

the rationale embraced by the court in *Nusbaum* and merely extended to official immunity analysis here that a challenge to conduct that follows a policy should be treated as a challenge to the policy itself.

**10.** To avoid the confusion that has so often permeated these immunity cases, we reiterate that although the school district sought statu-

tory immunity in the district court and court of appeals based on the protocol, that claim was rejected by both courts on the basis that the protocol was not a policy-level decision. That ruling is not before us, so the only issue is whether the adoption of the protocol involved operational-level discretion sufficient for common law official immunity.

istence of many private schools, is primarily a public-sector endeavor.

In addition, the concern expressed by the dissent that our decision "empowers government employees at any level to establish their own policy to create immunity for their behavior" ignores important aspects of our rationale. First, establishment of a protocol would not create a ministerial duty unless it legitimately controlled the conduct of employees. Second, an employee following the protocol would not be protected by common law official immunity unless the decision adopting the protocol involved sufficient judgment and discretion to qualify for official immunity. Third, a claim of failure to fulfill the resulting ministerial duty or negligent performance of the duty would not be protected by common law official immunity.

■ Because adoption of the protocol was a discretionary decision entitled to common law official immunity and because Peterson's liability is claimed to arise from his compliance with the protocol,[11] he is entitled to official immunity unless his action was a willful or malicious wrong. In this context, malice "means nothing more than the intentional doing of a wrongful act without legal justification or excuse, or, otherwise stated, the willful violation of a known right." *Rico*, 472 N.W.2d at 107 (citation omitted) (holding respondent could not have committed a willful or malicious wrong because no clearly established

law or regulation prohibited his conduct at the time he committed the act in question). We have established a high standard for a finding of a willful or malicious wrong in the context of common law official immunity, by requiring the defendant to "have reason to know that the challenged conduct is prohibited * * *. [T]he exception anticipates liability only when an official intentionally commits an act that he or she then has reason to believe is prohibited." *Id.*

■ Respondent contends that instructing Trevor to perform the rip cuts with the blade guard disengaged was a willful or malicious wrong because it was in violation of an Occupational Safety and Health Act (OSHA) regulation that requires use of a blade guard on a ripsaw.[12] However, Minnesota OSHA regulations apply to workplaces for the protection of employees. *See* Minn.Stat. §§ 182.65, subd. 2, and 182.653 (2002). Respondent has not directed us to any provision of OSHA or the regulations promulgated under it that make OSHA regulations applicable to machinery operated by students in a school setting. The court of appeals has applied to OSHA regulations the well-established principle that violation of a statute does not constitute negligence per se unless the victim of the harm was intended to be protected by the statute and unless the harm suffered is of the kind intended

---

11. The dissent mistakenly posits that our statement that Peterson correctly implemented the protocol "forces the determination that the conduct set forth in the unwritten 'protocol' was 'correct' (i.e. not negligent)," a decision the dissent contends should not be made on appeal. Once again, it must be noted that there is no claim in this case that Peterson negligently implemented the protocol (e.g., there is no claim that he permitted Anderson to make the rip cuts without using a push stick). Rather, the essence of the claim is

that Peterson was negligent because he *followed* the protocol.

12. The OSHA regulation reads, "Each circular hand-fed ripsaw shall be guarded by a hood which shall completely enclose that portion of the saw above the * * * material being cut." Occupational Safety and Health Standards, 29 C.F.R. § 1910.213(c)(1) (2003). By rule, federal OSHA regulations have been adopted for application under the Minnesota Occupational Safety and Health Act. Minn. R. 5205.0010 (2003).

to be prevented by the statute. *Zorgdrager v. State Wide Sales, Inc.*, 489 N.W.2d 281, 284 (Minn.App.1992). Further, the United States District Court for the District of Minnesota has stated that federal OSHA regulations only govern duties owed to an employee by an employer, not duties owed to a third party by an employer. *Banovetz v. King*, 66 F.Supp.2d 1076, 1081 (D.Minn. 1999) (citing *Prince v. Thomas*, 25 F.Supp.2d 1045, 1049 (N.D.Cal.1997) (stating, "[T]he federal OSHA requirements have [ ] been held not to apply in a case between an employer and a person who is not an employee.")).

In arguing that violation of the OSHA regulation was a willful wrong, respondent relies exclusively on a decision by the Pennsylvania Court of Common Pleas in which the court held that a state health and safety regulation could be used to establish the standard of care applicable to a school teacher who removed a blade guard resulting in injury to a student in his carpentry class. *Lundell v. Czajkowski*, 6 Pa. D. & C. 4th 40, 47 (Pa.Com.Pl. 1990). The court held that allegations of violation of the regulation were sufficient to nullify governmental immunity for the teacher where immunity is unavailable for willful misconduct. *Id.* at 42. The court based its reasoning on the language of Pennsylvania's health and safety statute and held that the statute's protection was not limited to employees, but extended to anyone injured as a result of a violation. *Id.* at 43. The court did not discuss the standard necessary to establish willful misconduct under Pennsylvania law, but rather appeared to hold only that the health and safety regulation could be used to establish a "reasonable person" standard of care and that would be enough to remove the protection of immunity.

█ As explained above, under Minnesota law a public official commits a willful or malicious wrong by "intentionally commit[ing] an act that he or she then has reason to believe is prohibited." *Rico*, 472 N.W.2d at 107. In that context, we first note that Peterson was acting in compliance with an established school protocol. Moreover, there was no clearly-established law in Minnesota that put Peterson on notice that state OSHA regulations were applicable beyond the employer-employee relationship. The Pennsylvania lower court decision relied on by respondent cannot be said to provide that notice. Moreover, its persuasive value is limited because of different statutory language and the court's failure to discuss the standard necessary to establish willful misconduct. We cannot conclude that Peterson intentionally committed an act that he had reason to believe was prohibited by instructing Trevor to make the rip cuts without the blade guard; no "clearly established law or regulation prohibited his conduct" in doing so. *Rico*, 472 N.W.2d at 107. Consequently, his conduct was not a willful or malicious wrong.

In summary, we hold that there are no genuine issues of material fact, the court of appeals erred in applying the law, and Peterson is entitled to common law official immunity because (1) respondent's only claim against him is that he followed a protocol set by the Technology Education Department that would be entitled to common law official immunity and (2) his conduct was not a willful or malicious wrong.

## II.

█ Having decided that Peterson is entitled to common law official immunity, the final issue presented in this case is whether the school district is vicariously immune from suit. Generally, if a public official is found to be immune from suit on a particular issue, his or her government employer will be vicariously immune from

a suit arising from the employee's conduct and claims against the employer are dismissed without explanation. *Pletan v. Gaines,* 494 N.W.2d 38, 42 (Minn.1992) (citing *Northernaire Productions, Inc. v. County of Crow Wing,* 309 Minn. 386, 390, 244 N.W.2d 279, 282 (1976); *Johnson v. Morris,* 445 N.W.2d 563, 569 (Minn.App. 1989), *aff'd,* 453 N.W.2d 31 (Minn.1990); *Koderick v. Snyder Brothers Drug, Inc.,* 413 N.W.2d 856 (Minn.App.1987), *overruled by Kaiser v. Memorial Blood Center of Minneapolis, Inc.,* 486 N.W.2d 762 (Minn.1992)). In dicta, however, this court has noted, "[N]ot infrequently a governmental entity is required to compensate for the harm done by a public official even though the official is not held personally liable." *Holmquist v. State,* 425 N.W.2d 230, 233 n. 1 (Minn.1988) (citation omitted). While some courts choose to extend immunity to the employer on a respondeat superior theory and other courts hold governmental entities can only take advantage of their own immunities, the question of whether to extend vicarious official immunity to a government employer remains a policy question. *Pletan,* 494 N.W.2d at 42.

■ Since *Pletan,* this court has further refined its vicarious official immunity standard. The court applies vicarious official immunity when failure to grant it would focus "stifling attention" on an official's performance "to the serious detriment of that performance." *Olson,* 509 N.W.2d at 372. This standard grants vicarious official immunity in situations where officials' performance would be hindered as a result of the officials second-guessing themselves when making decisions, in anticipation that their government employer would also sustain liability as a result of their actions.

■ In considering vicarious official immunity, we focus on the decision by the Technology Education Department to es-tablish the blade guard disengagement protocol in the first instance, as vicarious official immunity would flow from that decision, not the actions of Peterson in implementing the protocol in a non-negligent manner. Such an analysis is not outside the purview of this court. This court has recognized that a government employer may be entitled to vicarious official immunity when an employee (or in this case, a group of employees) was not named in the lawsuit. *Wiederholt,* 581 N.W.2d at 316–17. To deny a government employer vicarious official immunity simply because the official was not named in the suit would allow plaintiffs to defeat immunity by declining to name the official as a defendant. *Id.* at 317. *See Watson,* 553 N.W.2d at 415 (stating that the government employer was entitled to vicarious official immunity despite the official not being named in the suit). Consequently, the fact that respondent did not choose to sue the Technology Education Department that made the discretionary decision that is challenged should not deprive the district of vicarious official immunity.

■ Here, policy considerations support the conclusion that the school district is entitled to vicarious official immunity. In *S.W. v. Spring Lake Park Sch. Dist. No. 16,* 592 N.W.2d 870 (Minn.Ct.App. 1999), *aff'd without opinion,* 606 N.W.2d 61 (Minn.2000), the court of appeals was unwilling to extend vicarious official immunity to the school district because doing so would reward the school district for its failure to develop and implement a basic security policy that would have applied in the circumstances of the case. *Id.* at 877. In this case, instead of leaving the discretionary decision about use of the blade guard to each teacher in each situation, the Technology Education Department adopted a protocol based on the collective knowledge and experience of the staff.

Consequently, the district should be entitled to vicarious official immunity because to rule otherwise would create a disincentive to use collective wisdom to create such protocols and policies. In turn, this would also appear to cause the type of "stifling attention" to the actions of the Technology Education Department that would deter them from making such protocol determinations, which would, in turn, place stifling attention on the work of the teacher. *Olson*, 509 N.W.2d at 372.

Accordingly, we conclude the court of appeals erred in its determination that the district was not entitled to vicarious official immunity.

Reversed.

GILBERT, Justice (dissenting).

I respectfully dissent and would affirm the court of appeals. I believe that Peterson and Anoka Hennepin Independent School District 11 should not be entitled to official immunity and vicarious official immunity because the specific conduct alleged to be negligent in this case—the decision to instruct respondent to make rip cuts with the blade guard disengaged—does not involve the type of activity protected by official immunity. The majority uses a circular analysis to conclude that Peterson's conduct, though ministerial, should be entitled to official immunity because it was "required by a protocol established through the exercise of discretionary judgment that would itself be protected by official immunity." This new approach empowers a small group of government employees at any level of management to create official immunity for their behavior without any accountability. This analysis will also cause needless confusion with our traditional official immunity analysis and extends official immunity into an area in which we have held that the special status of immu-

nity does not apply—alleged negligence arising from the routine teaching decisions of a teacher. *See Larson v. Indep. Sch. Dist. No. 314, Braham*, 289 N.W.2d 112, 123 (Minn.1979). Official immunity should not be utilized to protect government officials at the operational level for claims of negligence based on activities of this nature.

The majority begins its analysis by concluding that Peterson's actions were ministerial because there was a "protocol" in place that governed his conduct. Traditionally, when an official's conduct is ministerial, official immunity does not apply. Here, however, the majority reverses the effect of "ministerial" duties and concludes that official immunity applies. In the process, it elevates what is no more than a common practice to allow government officials to clothe themselves with immunity because the "decision adopting the protocol involved sufficient judgment and discretion to qualify for official immunity." There is no cite to authority by the majority to support this novel official immunity doctrine. A brief examination of our jurisprudence on the use of the terms "ministerial" and "discretionary" in our official immunity analysis points out the error in the majority's reasoning.

We have frequently stated that official immunity does not protect government officials charged with the execution of ministerial functions; that is, charged with duties that are " 'absolute, certain and imperative, involving merely execution of a specific duty arising from fixed and designated facts.' " *Wiederholt v. City of Minneapolis*, 581 N.W.2d 312, 315 (Minn.1998) (quoting *Cook v. Trovatten*, 200 Minn. 221, 224, 274 N.W. 165, 167 (1937)). What we have unfortunately failed to make clear, however, is that ministerial duties are generally duties that are charged by law; that is, duties tied to a statute, ordinance, rule

or other official action. As we stated in *Cook,* when we adopted the definition of ministerial duties that we have continued to follow:

> A ministerial duty is one in which nothing is left to discretion, a simple, definite duty *arising under and because of stated conditions and imposed by law.* The idea has been put in this language. *"Official duty is ministerial, when it is absolute, certain, and imperative, involving merely execution of a specific duty arising from fixed and designated facts."*

200 Minn. at 224, 274 N.W. at 167 (emphasis added) (citations omitted); *see also Lodl v. Progressive N. Ins. Co.,* 253 Wis.2d 323, 646 N.W.2d 314, 321 (2002) ("a duty is regarded as ministerial when it has been *'positively imposed by law,* and its performance required at a time and in a manner, or upon conditions which are specifically designated * * *.' ") (emphasis added) (citations omitted).

Generally, when we have concluded that officials duties were ministerial, we have done so only where they were tied to a statute, ordinance, rule or other official action. *See Sletten, et al. and Brzinski v. Ramsey County,* 675 N.W.2d 291, 307–08 (Minn.2004) (concluding officials engaged in ministerial duties where removal of grass clippings was required by city-imposed conditional use permit and volume of yard waste deposited regulated by Minnesota Pollution Control Agency Permit–by–Rule); *Wiederholt v. City of Minneapolis,* 581 N.W.2d 312, 316 (Minn.1998) (concluding sidewalk inspector's duty to immediately repair sidewalk was ministerial where city ordinance required "immediate repair"). We have in some circumstances, however, broadened the concept of ministerial functions to include duties not specifically tied to a statute, ordinance, rule or other official action. In *Larson,* for example, we held that official immunity did not apply to a case of alleged teacher negligence in providing instructions in a physical education class because teaching "essentially involved a ministerial function." 289 N.W.2d 112, 120 (Minn.1979). Similarly, in *Olson v. Ramsey County,* we held that an official's implementation of a written case plan, which outlined the actions required of the official, involved the execution of assigned tasks and was therefore ministerial in nature and not entitled to immunity. 509 N.W.2d 368, 372–73 (Minn. 1993); *see also Williamson v. Cain,* 310 Minn. 59, 61, 245 N.W.2d 242, 244 (1976) (concluding that actions in demolishing a building were ministerial in nature without discussion of a statute, ordinance, rule or other official action). Crucially, however, in all these cases we broadened the concept of ministerial functions in order to prevent defendants from having the special status of immunity because, as we reasoned in *Larson,* "the level of judgment [the teacher] exercised was not intended to be covered under the doctrine of discretionary immunity." 289 N.W.2d at 121.

Even under this broadened concept of ministerial duties that we have established through our jurisprudence, however, Peterson's actions here cannot be labeled ministerial. The "protocol" that the majority relies on, which is also referred to as the "best practice" and the "best 'policy and procedure,' " was supposedly informally established years ago by the Coon Rapids High School Technology Department staff as an unwritten policy. It does not appear that Anoka Hennepin Independent School District 11 ever even considered this "protocol," much less made it part of its official or unofficial policy, rules or standards. Moreover, appellants have not challenged the court of appeals' denial of statutory immunity on this appeal, which is a near concession that this "protocol" was not made at the policy-making level. The

majority, nonetheless, describes an in-house, unwritten policy of one department in one school within the entire school district, which was not adopted or ratified by appellant Anoka Hennepin Independent School District 11 in any manner, as creating ministerial duties for Peterson.

The focus of our official immunity analysis is on the nature of Peterson's conduct and not on this "protocol." *See Elwood v. Rice County,* 423 N.W.2d 671, 677 (Minn. 1988). The majority concludes, with no support from precedent, that the fact that Peterson acted in accordance with duties created by this "protocol" makes his conduct entitled to official immunity. The majority's reasoning empowers government employees at any level to establish their own policy to create immunity for their behavior. In *Olson,* cited by the majority, county social workers were under a duty to design a suitable case plan. We held that a social worker's implementation of this plan was ministerial and her self-created ministerial duties *caused her to lose any possibility of having official immunity.* 509 N.W.2d at 372. We continued in *Olson* to hold that the defendant's actions in carrying out her responsibilities under the case plan made her not negligent as a matter of law. *Id.* at 373. Here, if Peterson's conduct were in fact ministerial, I might agree that his conduct was not negligent as a matter of law. However, Peterson's conduct based on the "best practice" was not ministerial and the majority should not extend official immunity to cover his actions. We should not grant a governmental employee special immunity based on complying with an unaccountable, in-house, unwritten "protocol."

The majority also relies on our reasoning in *Nusbaum v. County of Blue Earth,* 422 N.W.2d 713, 722 (Minn.1988), that a challenge to conduct that follows a policy should be treated as a challenge to the policy, but this reliance is misplaced. First, as the majority recognizes, *Nusbaum* addressed this issue in the context of statutory immunity, which is an important difference because statutory immunity is concerned with policy judgments. *See supra* majority at n. 4 (citing *Rico v. State,* 472 N.W.2d 100, 104 (Minn.1991)). Second, and more importantly, the conduct that was challenged was the implementation of a policy set forth in the Manual on Uniform Traffic Control Devises that was "adopt[ed] by the state" as a policy decision. *Nusbaum,* 422 N.W.2d at 722. Here, in contrast, the "protocol" that Peterson was to follow was an in-house, unwritten policy of one department in one school within the entire school district, which was not adopted or ratified by appellant Anoka Hennepin Independent School District 11 in any manner. Respondent's claim of negligence is not a "challenge to a policy" deserving of protection.

Peterson's conduct should be analyzed under our traditional official immunity analysis. The specific conduct at issue here—the decision to instruct respondent to make rip cuts with the blade guard disengaged—is a routine decision of a teacher. The key issue in determining whether to apply official immunity is whether the alleged negligent conduct involves the type of discretionary judgment protected by official immunity. This determination is the first step in an official immunity analysis, which should be made before determining whether the conduct was ministerial or not. *See Terwilliger v. Hennepin County,* 561 N.W.2d 909, 913–14 (Minn.1997) (holding that official immunity does not apply; case does not discuss whether the conduct was ministerial). The fact that conduct is not ministerial does not make it discretionary for purposes of official immunity. *Gleason v. Metro. Council Transit Operations,* 582 N.W.2d

216, 220–21 (Minn.1998); *Terwilliger*, 561 N.W.2d at 913–14 (Minn.1997). The exercise of some degree of judgment or discretion will not necessarily confer immunity—the crucial focus for official immunity is always on the nature of the act. *Terwilliger*, 561 N.W.2d at 913.

The purpose of official immunity is to protect public officials from the fear of personal liability that might deter independent action and impair effective performance of their duties in situations that require significant independent judgment. *Watson v. Metro. Transit Comm'n*, 553 N.W.2d 406, 414 (Minn.1996); *Elwood v. County of Rice*, 423 N.W.2d 671, 677 (Minn.1988). Accordingly, we have applied official immunity to such conduct as a police officer's split-second decision whether to engage in a high speed chase, *Pletan v. Gaines*, 494 N.W.2d 38, 41 (Minn.1992); paramedics' driving in response to an emergency in an emergency medical vehicle, *Kari v. City of Maplewood*, 582 N.W.2d 921, 925 (Minn.1998); and a bus driver's decision not to use an intercom system or stop the bus during an altercation, *Watson*, 553 N.W.2d at 415. The majority cites to no case where we have applied official immunity to prevent a negligence suit for the routine decisions of a teacher.

In fact, our cases suggest that immunity should not apply to the type of conduct at issue in this case. In *Terwilliger*, a unanimous decision issued by this court in 1997, we held that official immunity did not apply to a case of alleged negligence of government employees in treating a depressed patient—specifically, in failing to hospitalize the patient and instead treating his condition with medication and consultation. 561 N.W.2d at 913–14. We reasoned that "decisions of this kind—no matter

how difficult and no matter how much professional judgment is required—do not involve the discretion protected by official immunity; they only implement [the county's] established public policy of providing treatment for its mentally ill citizens." *Id.* at 913. Importantly, the employees were implementing "public policy," not a specific policy requiring established duties. *Id.* Similarly, in *Gleason*, we followed the reasoning of *Terwilliger* to hold that official immunity is not intended to protect such conduct as a bus driver's alleged harassing comments and actions toward a passenger because the discretion required to do so was not the discretion that official immunity considers. 582 N.W.2d at 221.

The majority simply dismisses *Larson*, our only case to consider official immunity for the teaching decisions of a teacher. In *Larson*, we held that official immunity did not apply to a case of alleged teacher negligence in providing instructions in a physical education class. 289 N.W.2d at 121. Crucially, we reasoned in *Larson* that official immunity should not apply because "the level of judgment [the teacher] exercised was not intended to be covered under the doctrine of discretionary immunity." *Id.* We also cautioned that official immunity must be narrowly construed in light of the fact that it is an exception to the general rule of liability. *Id.* This is the same reasoning that we used in *Terwilliger*. As in *Larson*, the routine teaching decisions of Peterson should not be covered by official immunity.[1]

I would affirm the court of appeals, which, although it concluded that Peterson's actions were ministerial, correctly reasoned that official immunity does not apply because "the nature and complexity of [Peterson's decisions] does not entitle him to official immunity." *Anderson v.*

---

1. The majority states: "[i]mportantly, this holding preserves existing case law * * *." However, the majority ignores our case law

based on a distinction—complying with a duty—that simply does not make a difference for official immunity purposes.

*Anoka Hennepin Indep. Sch. Dist. 11,* 655 N.W.2d 847, 854 (Minn.App.2003). The specific conduct at issue in this case— Peterson's decision to instruct respondent to make rip cuts with the blade guard disengaged—is not discretionary in the sense of being a decision in which significant independent judgment is desired. In *Terwilliger,* we reasoned that it would be improper to stretch the scope of official immunity to the routine decisions of mental health professionals because those decisions were "based on the same elements and subject to the same risks as are the treatment decisions of psychiatrists and other mental health professionals engaged in the private practice of medicine." 561 N.W.2d at 913. Here, the majority ignores our principle of narrow construction and provides no good reason for why we should expand official immunity to cover the routine decisions of a teacher who just happens to be a government employee. Therefore, official immunity and vicarious official immunity should not apply to this case.

If the case proceeded to trial, substantial factual issues would need to be resolved as to whether the conduct complained of was negligent. We need not and should not decide whether Peterson's conduct was negligent on this appeal. The majority's analysis forces the determination that the conduct set forth in the unwritten "protocol" was "correct" (i.e., not negligent), which is a determination that has no place in our official immunity analysis. The fact that Peterson complied with an unwritten "protocol" may be relevant in the context of determining negligence, but the court here should not summarily conclude that the conduct was immune just because the teacher happens to be a government employee.