**Joyce MEIER, Respondent,**

v.

**CITY OF COLUMBIA HEIGHTS, Appellant,**

**Mel Colova, et al., Defendants.**

**No. A04–58.**

Court of Appeals of Minnesota.

Sept. 22, 2004.

---

Jon P. Parrington, Pustorino, Tilton, Parrington & Lindquist, PLLC, Minneapolis, MN, for appellant and defendants.

Karen E. Marty, Marty Law Firm, LLC, Bloomington, MN, for respondent.

Considered and decided by ANDERSON, Presiding Judge; TOUSSAINT, Chief Judge; and PETERSON, Judge.

## OPINION

G. BARRY ANDERSON, Judge.

Respondent filed a complaint alleging illegal seizure, violation of procedural due process, violation of 42 U.S.C. § 1983, and vandalism against appellant, City of Columbia Heights, and numerous individuals. Appellant and the individually-named defendants moved for summary judgment based on qualified and official immunity. The district court found the individual defendants were entitled to qualified immunity from respondent's 42 U.S.C. § 1983 claims, as well as official immunity in relation to respondent's state-law claims. But the district court denied appellant's summary judgment motion and thus declined to extend any immunity to appellant. Appellant then moved to dismiss the action based specifically on vicarious official immunity, but the district court denied this motion as well and appellant challenges the denial. Respondent, pursuant to a notice of review, seeks review of the district court's determination regarding the individual defendants' rights to qualified and official immunity.

## FACTS

Respondent owns a duplex located in Columbia Heights. Respondent lived in half of the building, and used the other half to store various items she identifies as collectibles and antiques. According to respondent, these items "were in good condition, except for some furniture which could be repaired."

On October 15, 1995, appellant received a complaint regarding the condition of respondent's property. Appellant inspected the home in 1996, documenting via photographs various housing and fire code violations, including garbage and debris inside the building. Two years later, appellant issued a compliance order directing respondent to clean up the exterior of the property, and on June 22, 1998, appellant cited respondent for a violation of appellant's housing maintenance code. In the fall of 1999, appellant received further complaints regarding the condition of respondent's property. Thereafter, on November 29, 1999, Columbia Heights Fire Department (CHFD) employees visited respondent's residence. The CHFD employees "saw furniture and other items stacked four to five feet high in the interior, which did not appear to be habitable." On December 1, 1999, CHFD employees spoke with respondent at her property, at which time they noted the entry door could only be opened a third of the way because of various items stacked inside the unit. Respondent admitted to the CHFD employees that her home was more than she could deal with.

Appellant determined respondent's home was a garbage house due to the extraordinary clutter. On February 8, 2000, Mel Collova, a Columbia Heights

building official,[1] sent respondent a letter referencing a complaint related to sections 102 and 3402 of the "Minnesota State Building Code, 1997 Uniform Building Code."[2] The letter directed respondent to contact appellant within fifteen days to schedule a code compliance inspection of the property. Furthermore, the letter stated, "**Be advised,** failure to comply with this request will lead to the City Attorney being instructed to obtain an Administrative Search warrant to conduct the inspection. Legal fees for this process will be assessed to you as the property owner of record." (Bolded emphasis in original.)

On July 26, 2000, appellant submitted a supporting affidavit and application for an administrative search warrant. The application and affidavit outlined the basis for inspecting the home, including a complaint from 1996, as well as personal observations by the affiant, Charlie Thompson, chief of the CHFD.[3] The district court signed an administrative search warrant on July 27, 2000. The warrant was "for the purpose of examination and investigation to enforce the Minnesota Uniform Fire Code/Columbia Heights Fire and Housing Codes, the State Uniform Building Code" and to ensure "the health, safety, and welfare of its occupant(s)". Thompson and others under his direction were permitted to (1) enter, examine, and investigate the property in order to enforce the cited codes; (2) take photographs and measurements, conduct tests, and perform other such duties to ensure proper enforcement of the codes;

and (3) hold any evidence in accordance with the law.

The administrative search warrant was executed on August 23, 2000, and the abatement was conducted on August 23–25, and 28.[4] Respondent was not present on August 23, when the defendants entered the home and began the clean-up. Respondent alleges that many items were taken during abatement of the nuisance, including hundreds of antiques, heirlooms, and collectibles. Additionally, respondent claims that many items left behind during the abatement were damaged, and the house was damaged and dirty when the defendants left. Appellant then billed respondent for costs related to the abatement, levying a special assessment on the property for $16,602.91.

Appellant challenges the denial of its motion for summary judgment based on vicarious official immunity. Through a notice of review, respondent challenges the dismissal of her claims against the individually-named defendants, contending they are not entitled to immunity.

### ISSUES

I. Are the individual defendants entitled to official immunity based on state law?

II. Did the district court err in determining appellant was not entitled to vicarious official immunity, even

---

1. Collova was named in the original action but was dismissed on summary judgment as a result of the immunity finding by the district court.

2. The 1997 Uniform Building Code was adopted by City of Columbia Heights, Minn., Ordinance No. 1378, § 4 (1998) in accordance with Minn.Stat. § 471.62 (1998) (permitting municipalities to adopt codes by reference).

3. Thompson was also named in the original lawsuit but was found to be immune and was dismissed from the litigation.

4. "Abatement" is defined as the act of eliminating or nullifying a nuisance. Blacks Law Dictionary 3 (8th ed.2004).

though appellant's public officials were granted official immunity?

III. Are the individual defendants entitled to qualified immunity based on 42 U.S.C. § 1983?

## ANALYSIS

### Standard of Review

▬ A district court's decision regarding governmental immunity is immediately reviewable by this court. *Anderson v. City of Hopkins*, 393 N.W.2d 363, 364 (Minn.1986). On appeal from summary judgment, this court must determine whether there are any genuine issues of fact and whether the district court erred in its application of the law. *Wiederholt v. City of Minneapolis*, 581 N.W.2d 312, 315 (Minn.1998). An order for summary judgment denying an immunity defense is appealable because immunity from suit is lost if a case is erroneously allowed to go to trial. *McGowan v. Our Savior's Lutheran Church*, 527 N.W.2d 830, 832 (Minn.1995) (citing *Anderson*, 393 N.W.2d at 364). The applicability of immunity is a question of law, which this court reviews de novo. *Johnson v. State*, 553 N.W.2d 40, 45 (Minn. 1996).

▬ The party asserting immunity has the burden of showing particular facts demonstrating an entitlement to immunity. *Fear v. Indep. Sch. Dist. 911*, 634 N.W.2d 204, 209 (Minn.App.2001), *review denied* (Minn. Dec. 11, 2001). When reviewing a denial of summary judgment based on a claim of immunity, we presume "the truth of the facts alleged by the nonmoving party." *Id.*

### I.

The primary issue before this court is the denial of vicarious official immunity.

But because official immunity must be extended before granting vicarious official immunity, it is necessary to determine if official immunity was appropriate here. While this court declines review of additional issues in immunity appeals, a discussion regarding appellants right to vicarious official immunity is inextricably intertwined with the individually-named defendants right to official immunity. *Swint v. Chambers County Commn.*, 514 U.S. 35, 50–51, 115 S.Ct. 1203, 1212, 131 L.Ed.2d 60 (1995) (declining review of additional issues in immunity appeals, unless those issues are inextricably intertwined with immunity issues); *see* Minn. R. Civ.App. P. 103.03 (outlining appealable judgments and orders).

▬ Traditionally, the application of official immunity in Minnesota "protects public officials from the fear of personal liability that might deter independent action and impair effective performance of their duties." *Terwilliger v. Hennepin County*, 561 N.W.2d 909, 913 (Minn.1997). But the Minnesota Supreme Court has significantly altered the analysis of official immunity under Minnesota law. *Anderson v. Anoka Hennepin Ind. Sch. Dist. 11*, 678 N.W.2d 651 (Minn.2004). Until *Anderson*, official immunity was primarily governed by, among other decisions, *Larson v. Indep. Sch. Dist. No. 314, Braham*, 289 N.W.2d 112 (Minn.1979); *Elwood v. County of Rice*, 423 N.W.2d 671 (Minn.1988); *Terwilliger*, 561 N.W.2d at 909; *Wiederholt v. City of Minneapolis*, 581 N.W.2d 312 (Minn.1998); and *Gleason v. Metro. Council Transit Operations*, 582 N.W.2d 216 (Minn.1998). *Anderson*, 678 N.W.2d at 655–56, 660–61. Most significantly, the advent of *Anderson* alters the applicability of official immunity to ministerial duties.[5] *Id.* at 661 (stating the su-

---

5. "Ministerial" means a duty that is "abso- lute, certain, and imperative, involving merely

preme court "mistakenly applied statutory immunity standards in [its *Larson*] analysis").

 At issue in *Anderson* was the official immunity of a teacher, as well as the vicarious official immunity of the school district. *Id.* at 654–55. The supreme court stated:

> We see no reason for a different result when common law official immunity is at issue [instead of statutory immunity]. Accordingly, we hold that a teacher, like Peterson, does not forfeit official immunity because his or her conduct was ministerial if that ministerial conduct was required by a protocol established through the exercise of discretionary judgment that would itself be protected by official immunity.

*Id.* at 660. Stemming from this change in approach, the supreme court explained that official immunity also applies to ministerial conduct because the absence of immunity could have a chilling effect on employee actions. *Id.* Thus, the supreme court expanded the application of official immunity to include ministerial duties, unless an employee fails to perform, or negligently performs, such a duty. *Id.* at 660. When applying this "ministerial-conduct bar," three concerns must be addressed to determine the applicability of official immunity: (1) a ministerial duty is not established unless the policy actually controls the conduct of the employee; (2) employees are not protected by official immunity unless discretion was exercised in adopting the policy; and (3) official immunity does not apply when an employee fails to perform, or negligently performs, a ministerial duty. *Id.* at 662.

Consequently, instead of holding lower-level employees responsible for the flaws in the judgment and discretion of their supervisors, *Anderson* shifts the focus to the policy itself, not its application. *Id.* at 660; *see also Nusbaum v. County of Blue Earth*, 422 N.W.2d 713, 723 (Minn.1988) (holding a challenge to employees' application of a policy is a challenge to the policy itself, not the conduct of the employees). Under the *Larson* standard, individuals are entitled to official immunity only if they exercised judgment during the adoption of the policy but not if they were carrying out mere ministerial duties. *Larson*, 289 N.W.2d at 121. This court interprets *Anderson* to continue the application of official immunity to those previously entitled to such immunity under *Larson* and similar cases, but employees not involved in the adoption of policies may also be entitled to official immunity. *Anderson*, 678 N.W.2d at 660–61.

In the present case, there is little doubt that appellant exercised discretion in adopting a policy in the form of a local ordinance to deal with nuisance properties, and there is little doubt that the individually-named defendants were acting in a ministerial capacity by simply carrying out instructions designed to fulfill the requirements of that local ordinance.[6]

---

the execution of a specific duty arising from fixed and designated facts." *Wiederholt*, 581 N.W.2d at 315 (quotation omitted).

**6.** A property deemed to be a nuisance *shall* be abated by repair, rehabilitation, demolition or removal in accordance with the procedures set forth in the Dangerous Buildings Code *or such alternate procedures as may have been or as may be adopted by this jurisdiction. As an alternative, the*

*building official, or other employee or official of this jurisdiction as designated by the governing body, may institute any other appropriate action to prevent, restrain, correct or abate the violation.*
Uniform Building Code § 102 (1997); *see supra* note 2. Appellant also based its abatement of the nuisance on section 3402 of the Uniform Building Code:

To comply with this policy, the administrative search warrant permitted the individually-named defendants to enter, examine, and investigate the property. Additionally, the individually-named defendants were permitted to take photographs, conduct tests, take measurements, and perform other actions to ensure proper enforcement of the codes, including holding any evidence in accordance with the law.

Because the abatement of the nuisance was required by Columbia Heights Ordinance No. 1378, the question becomes whether the individually-named defendants negligently performed, or failed to perform, a ministerial duty. Because the record lacks any allegation that a ministerial duty was not performed, we consider only if this ministerial duty was negligently performed. During the abatement, the individually-named defendants removed those items that threatened the health, safety, and welfare of respondent and other citizens. Not only were the individually-named defendants required to remove items constituting the nuisance, but they were also permitted to "institute any other appropriate action to prevent, restrain, correct or abate the violation." Uniform Building Code § 102 (1997); *see supra* note 2. Therefore, because the ministerial duty at issue is the abatement of a nuisance property in accordance with a municipality's ordinance, and because the ordinance grants significant latitude to those carrying out the duty, we cannot conclude based on the record before us that the ministerial duty was negligently performed.

■■ Subsequent to the application of the ministerial-conduct bar, the *Anderson* court noted a second stage in the analysis of official immunity may be necessary. *Anderson*, 678 N.W.2d at 660. A claim that a defendant "is liable because he followed the departmental protocol, [ ] is in reality a challenge to the protocol itself. The question then is whether the adoption of the protocol was discretionary in the sense necessary to give rise to common law official immunity." *Id.* at 661. Upon determining the policy was adopted through a discretionary process, immunity is conferred unless the acts in question were a willful or malicious wrong. *Id.* at 661–62.

■■ The abatement at issue here was executed in accordance with a three-tiered discretionary policy adoption process: (1) Uniform Building Code; (2) Columbia Heights Ordinance No. 1378; and (3) Minn.Stat. § 16B.61 (1998). The discretionary nature of adopting or creating each of these levels is more than sufficient to satisfy the application of official immunity. Thus, because adoption of the abatement process was a discretionary decision entitled to official immunity, and because the individually-named defendants' liability is claimed to arise from their compliance with the policy, official immunity will continue to apply absent a willful or malicious wrong. *Id.* at 662. "[M]alice means nothing more than the intentional doing of a wrongful act without legal justification or excuse, or, otherwise stated, the willful violation of a known right." *Id.* (quotation omitted). Therefore,

All buildings and structures, both existing and new, and all parts thereof, shall be maintained in a safe and sanitary condition. All devices or safeguards required by this code shall be maintained in conformance with the code edition under which installed. The owner or the owner's designated agent shall be responsible for the maintenance of buildings and structures. To determine compliance with this subsection, the building official may cause a structure to be reinspected.
Uniform Building Code § 3402 (1997); *see supra* note 2.

[t]he defendant must have reason to know that the challenged conduct is prohibited. The exception does not impose liability merely because an official *intentionally* commits an act that a court or a jury subsequently determines is a wrong. Instead, the exception anticipates liability only when an official intentionally commits an act that he or she then has reason to believe is prohibited.

*Rico v. State*, 472 N.W.2d 100, 107 (Minn. 1991).

In the present case, the record is devoid of even a scintilla of evidence the individually-named defendants committed a willful or malicious wrong. The nuisance was abated by removing items that threatened the health, safety, and welfare of respondent and other citizens, and there is no evidence to suggest the removal or destruction of items from respondent's property was premised on an intentional action which any of the individually-named defendants had reason to know was prohibited. To the contrary, the actions here were required by Ordinance No. 1378. Because an independent review of the record fails to establish any willful or malicious wrongs committed by the individually-named defendants, the district court properly granted the individually-named defendants official immunity regarding respondent's state-law claims.

## II.

The district court, while granting qualified and official immunity to the individually-named defendants, denied appellant's motion to dismiss based on vicarious official immunity. Appellant maintains it is entitled to vicarious official immunity based on the district court's grant of official immunity to appellant's officials.

"Generally, if a public official is found to be immune from suit on a particular issue, his or her government employer will be vicariously immune from a suit arising from the employee's conduct and claims against the employer are dismissed without explanation." *Anderson*, 678 N.W.2d at 663–64. But the transition from official immunity to vicarious official immunity is not automatic. "[V]icarious official immunity [applies] in situations where officials' performance would be hindered as a result of the officials second-guessing themselves when making decisions, in anticipation that their government employer would also sustain liability as a result of their actions." *Id.* at 664. When applying this rule in *Anderson*, the supreme court noted *S.W. v. Spring Lake Park Sch. Dist. No. 16*, 592 N.W.2d 870 (Minn.App.1999) *aff'd without opinion*, 606 N.W.2d 61 (Minn.2000). *Anderson*, 678 N.W.2d at 664. In *S.W.*, this court ruled that a school district that had not adopted a security policy was not entitled to vicarious official immunity because "[t]o hold otherwise would be to reward the school district for its failure to develop and implement a basic security policy that would have applied in these circumstances." *S.W.*, 592 N.W.2d at 877.

While appellant bases its actions on sections 102 and 3402 of the Minnesota State Building Code, 1997 Uniform Building Code, these sections do not provide detailed abatement procedures. Similarly, a comprehensive and independent review of the current record fails to reveal appellant adopted any detailed abatement procedures. And, in lieu of abatement procedures specifically adopted by appellant, appellant could have, but did not, conduct abatement proceedings pursuant to Minn. Stat. §§ 463.15–463.261 (1998). These sections outline, in very specific terms, procedures to address hazardous and substandard buildings, as well as other nuisance issues relating to the condition of real property. *Id.*

It is not the function of this court to require that appellant adopt or use any specific set of procedures. We recognize that abatement of nuisance conditions can involve significant public health issues, and the record here more than substantiates the public health concern with respondent's property. And, although not an issue in the present dispute, speed and promptness in abating a nuisance may also be required. But "abating a nuisance," at least in the context of this case, means the discarding of respondent's personal property. Appellant, on the record before us, has cited no procedures or policies designed to ensure that both the public health and respondent's property rights are appropriately protected.

■ Based on the current record, the absence of abatement procedures is the functional equivalent to the school district's failure to adopt an adequate security plan in *S.W.* 592 N.W.2d at 877. Although the application of vicarious official immunity is automatic when there is a finding of official immunity in high-speed police pursuit cases, determining whether to grant vicarious official immunity with other circumstances hinges on a policy analysis. *Id.* (citing *Pletan v. Gaines*, 494 N.W.2d 38, 43 (Minn.1992)). In *S.W.*, this court declined to grant vicarious official immunity because to do so would reward the school district's failure to adopt a basic security plan. *Id.* In *Pletan*, "the need to protect the public [was] balanced against the concern that the public not be put unduly at risk" during high-speed police pursuits. 494 N.W.2d at 42. Here, our policy analysis turns on property rights and the health, safety, and welfare of the property owner and other citizens. The absence of abatement, assessment, and other related procedures, detailed or otherwise, leaves unclear whether individual property rights are adequately protected.

We note specifically that we take no position on whether liability attaches to appellant or whether a trial or further proceedings might demonstrate that appellant is entitled to vicarious official immunity. Based on the summary judgment posture and record of this case, we decline to extend vicarious official immunity shielding appellant from liability, if any, arising from respondent's claims against appellant and we affirm the district court on this issue.

### III.

Respondent filed a notice of review with this court seeking review of the district courts grant of qualified and official immunity to the individually-named defendants. This court will only review appeals taken "from a final judgment, or from a partial judgment entered pursuant to Minn. R. Civ. P. 54.02". Minn. R. Civ.App. P. 103.03(a); *see also Swint v. Chambers County Commn.*, 514 U.S. 35, 50–51, 115 S.Ct. 1203, 1212, 131 L.Ed.2d 60 (1995) (declining review of additional issues in immunity appeals, unless those issues are inextricably intertwined with immunity issues). In the present case, there is no final judgment or appropriate partial judgment from the district court in relation to respondents 42 U.S.C. § 1983 claims. Additionally, while this court addressed the applicability of official immunity, such analysis was only necessary in order to reach the issue of vicarious official immunity. Because there is no final judgment or appropriate partial judgment from the district court on the grant of qualified and official immunity, we decline to reach the issues raised by respondent in her notice for review.

### DECISION

Because we conclude the district court properly granted the individually-named

defendants official immunity on respondent's state-law claims, and because appellant failed to demonstrate that vicarious official immunity should be applied under these circumstances, we affirm the district court and remand for further proceedings not inconsistent with this opinion.

**Affirmed.**